EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| CD Builders, Inc.<br><br>Peticionario<br><br>v.<br><br>Municipio de la Piedras<br><br>Recurrido | Certiorari<br><br>2016 TSPR 190<br><br>196 DPR ____ |

Número del Caso: CC-2014-125

Fecha: 31 de agosto de 2016

Tribunal de Apelaciones:

    Región Judicial de San Juan y Guayama, Panel III

Abogado de la Parte Peticionaria:

    Lcdo. José Luis Cumba Torres

Abogado de la parte Recurrida:

    Lcdo. Roberto Bonano Rodríguez

Materia: Subastas – Efecto de un error numérico en una propuesta de subasta de un municipio; corrección del error luego de efectuarse el proceso de subasta constituye un error insubsanable que requiere la descalificación de la propuesta.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

CD Builders, Inc.
    Peticionario

        v.                          CC-2014-0125        *Certiorari*

Municipio de Las Piedras
        Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico, a 31 de agosto de 2016.

Este caso nos brinda la oportunidad de expresarnos sobre el efecto que tiene en la adjudicación de una subasta un "error numérico" en una propuesta de subasta realizada por la Junta de Subasta de un municipio. Específicamente, nos corresponde determinar si el permitir la corrección del error numérico en la cotización, luego de haberse efectuado el proceso de subasta, constituye un error insubsanable que requiere la descalificación de la propuesta o si por el contrario, la corrección de la cotización y a su vez del precio, tiene el efecto de convertir en responsiva una oferta.

Por los fundamentos que se explican a continuación, se revoca la Sentencia del Tribunal de Apelaciones que ordena la celebración de una nueva subasta. A continuación exponemos los hechos esenciales a la controversia que atendemos, así como el derecho aplicable a ésta.

I

El 19 de junio de 2013, la Junta de Subastas del Municipio de Las Piedras (en adelante Junta de Subastas) publicó la Invitación de Subasta Núm. 11-12-13 para la Reconstrucción del Desvío Félix López; Carr. PR-183 Conector PR-921 del mencionado municipio. En ésta se detallaron las condiciones e instrucciones especiales para la celebración de la subasta.[1] En lo pertinente, la invitación disponía que los licitadores debían revisar sus propuestas antes de someterlas ya que no se podrían subsanar errores contenidos en éstas.[2] También señalaba que no se permitiría bajo ninguna circunstancia el retiro de una oferta o efectuarse cambios o modificaciones a la propuesta después de ésta haber sido abierta y leída en público.

Así las cosas, el 3 de julio de 2013 se llevó a cabo una Reunión Pre-Subasta con el propósito de orientar,

---

[1] Cabe señalar, que por el Municipio de Las Piedras no tener un reglamento de subasta, la invitación de subasta constituye para todos los efectos un aviso de subasta formal, conforme a la Parte II sobre subasta pública municipal del Reglamento para la Administración Municipal, Reglamento Núm. 7539, Departamento de Estado, 18 de julio de 2008.

[2] Véase Invitación de Subasta Número 11-12-13 Reconstrucción Desvío Félix López, Carr. PR-183 Conector PR-921, FEMA PR-1798 PW-000470(2), Municipio de Las Piedras, Apéndice III.

contestar preguntas a los licitadores y discutir los asuntos relevantes al proyecto. Posteriormente, el 18 de julio de 2013, se celebró la subasta a la cual comparecieron 18 licitadores con sus respectivas ofertas, entre ellos, C.J.O. Construction y CD Builders. El 23 de agosto de 2013, tras recibir las propuestas de los licitadores, la Junta de Subastas procedió a la apertura de los pliegos de la licitación. Los costos cotizados por ambos licitadores fueron los siguientes: C.J.O. Construction, $573,000.00 y CD Builders, $596,664.00.[3]

Al examinar las propuestas, la Junta de Subastas se percató que en la propuesta de la compañía C.J.O Construction había un "error numérico". El error consistió en que la referida compañía cotizó 400 yardas cúbicas en vez de 600, según se había solicitado en la hoja de especificaciones que los licitadores debieron obtener en la Oficina de Secretaría Municipal previo al proceso de subasta. A tales efectos, el Comité Asesor junto al ingeniero y desarrollador del proyecto, recomendaron a la Junta de Subastas que le permitiera al licitador corregir el error. En atención a lo anterior, C.J.O. procedió a corregir el error y sometió nuevamente su propuesta enmendada.[4] El 26 de agosto de 2013, la Junta de Subastas

---

[3] Nótese, no obstante, que según detallamos más adelante, el costo propuesto por C.J.O. Construction correspondía a una cotización de 400 yardas cúbicas, mientras que el costo propuesto por CD Builders cotizaba 600 yardas cúbicas.

[4] Cabe destacar que, según mencionamos, la propuesta formulada inicialmente por C.J.O. Construction fue de $573,000.00 por 400 yardas cúbicas, esto es $1,432.00 por yarda cúbica. Tras corregir el "error

adjudicó el proyecto a la referida compañía, por ser el licitador con la propuesta más baja.

Inconforme, CD Builders sometió ante la consideración del Tribunal de Apelaciones un recurso de Revisión solicitando la revocación de la determinación de la Junta de Subasta que favorecía a C.J.O. Construction Corp. Adujo, entre otras cosas, que la Junta de Subastas cometió un claro abuso de discreción al excederse en sus funciones al permitir la alteración y el aumento en el precio luego de haberse celebrado la subasta, afectando la integridad del proceso, colocando en desventaja al resto de los licitadores y creando una condición de aparente conflicto de interés y favoritismo. Sostuvo que cuando se establecen procedimientos y guías para los procesos de licitación bajo ningún concepto se puede alterar una propuesta luego de que se entregan los sobres sellados y se publican las ofertas. Ello, tendría el efecto de convertir el error en uno insubsanable. De manera que, como cuestión de política pública, se requiere que todos los licitadores comparezcan en igualdad de condiciones y con parámetros uniformes. Por último, añadió que la determinación del Municipio va contra sus propios actos ya que contradice las condiciones que el mismo impuso.

Por su parte, el Municipio alegó que no se trata de un error insubsanable ya que este tiene la facultad de adquirir los bienes y servicios al mejor costo posible

_____

numérico", la referida compañía cotizó las 600 yardas cúbicas por $588,000.00, lo cual equivale a $980.00 por yarda cúbica.

mediante la correcta utilización de sus recursos. Además, adujo que tal actuación de ninguna manera fue caprichosa o en beneficio del agraciado porque aun después de corregido el error, C.J.O. Construction fue la compañía que presentó la cotización más baja por lo que cumplió con los precios unitarios, según las especificaciones provistas.

El 26 de noviembre de 2013 el foro apelativo dictó sentencia a favor de CD Builders y ordenó la celebración de una nueva subasta. Oportunamente, el 10 de diciembre de 2013, el peticionario presentó sin éxito una solicitud de reconsideración en cuanto a la celebración de una nueva subasta. El recurso estuvo acompañado de una *Moción en auxilio de jurisdicción* en la cual solicitó que se ordenara la paralización de los procesos de contratación de la subasta. En cuanto a la solicitud de paralización, el foro apelativo intermedio la declaró con lugar. Sin embargo, denegó el recurso de reconsideración.

Inconforme con la determinación del Tribunal de Apelaciones de que se celebre una nueva subasta, CD Builders acude ante nos mediante *Certiorari* y señala los errores siguientes:

> Erró el Tribunal de Apelaciones (TA) al no percatarse que una vez se determina que un licitador no fue responsivo en su propuesta a base de los hechos probados en la licitación, no es razonable ordenar una nueva subasta y lo que procede a tenor con el fin público es concederle la buena pro al segundo postor responsable y responsivo, máxime cuando la diferencia entre ambos fue mínima.

> Erró el Tribunal de Apelaciones (TA) al ordenar una nueva subasta a sabiendas de que el

licitador no fue responsivo, adjudicándole el error a la Junta de Subasta de manera contradictoria a lo expresado en su sentencia, debido a que el error de la Junta de Subastas constituyó un segundo error cometido por el licitador impugnado por ser el mismo de naturaleza insubsanable.

En síntesis, CD Builders sostuvo que la Junta de Subastas actuó arbitraria y caprichosamente al ignorar las condiciones y términos especiales incluidos en la Invitación a Subasta. Adujo que el error cometido es uno insubsanable por lo que solicitó la revocación de la subasta y la adjudicación de la buena pro a CD Builders por ser éste el segundo postor y licitador responsivo. Añadió que la celebración de una nueva subasta incide sobre el interés público ya que, entre otras cosas, se dilataría el proceso de subasta. Además, al ser una obra financiada por Federal Emergency Management Act (FEMA), crearía un impacto económico en los fondos federales.

Por su parte, el Municipio de Las Piedras planteó, en esencia, los mismos argumentos esgrimidos cuando se opuso a la petición de revisión ante el foro apelativo intermedio. No obstante, puntualizó que de lo que se trató este caso fue de un ajuste de renglón al surgir una discrepancia en la propuesta. Concluyó que correspondía adjudicar la buena pro a C.J.O. Construction quien resultó ser el mejor postor.

Tras la comparecencia y el beneficio de los alegatos de ambas partes, expedimos el recurso de *Certiorari* y resolvemos.

II

Los contratos gubernamentales constituyen un elemento importante en la erogación de fondos públicos. Es por ello que en cuanto a la contratación gubernamental en Puerto Rico y con la pretensión de proteger los fondos públicos, los municipios de Puerto Rico llevan a cabo el proceso de subasta pública como uno de los mecanismos de adquisición disponibles para las compras, suministros y/o la realización de obras de construcción. Mediante este proceso de competencia se allegan los recursos disponibles en el mercado en un balance de precios y calidad.

Dado a que la adjudicación conlleva el desembolso del erario, el proceso de subasta pública está revestido del más alto interés público y aspira a promover la sana administración gubernamental.[5] Por ello, el fin principal es proteger los fondos públicos mediante la construcción de obras públicas y/o la adquisición de servicios al mejor precio posible.[6] Al así hacerlo, debe procurarse conseguir los precios más bajos, evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia, el descuido al otorgarse los contratos y minimizar los riesgos de incumplimiento.[7] Para cumplir con

---

[5] Caribbean Comm. v. Pol de P.R., 176 DPR 978, 994 (2007); Costa Azul v. Comisión, 170 DPR 84, 854 (2007); A.E.E. v. Maxon, 163 DPR 438, 439 (2004).

[6] Íd.; Empresas Toledo v. Junta de Subastas, 168 DPR 771, 779 (2006); RBR Const., SE v. Aut. De Carreteras, 149 DPR 836, 848-849 (1999). Véase, además, Trans Ad de Puerto Rico, Inc. v. Junta de Subastas, 174 DPR 56, 66 (2008).

[7] Íd.; Aut. De Carreteras v. CD Builders, Inc. 177 DPR 398, 404 (2009); Accumail P.R. v. Junta Sub. AAA, 170 DPR 821, 827 (2007); Empresas Toledo, supra, pág. 778.

este propósito, es necesario que durante el proceso de subasta se fomente la competencia libre y transparente entre el mayor número de licitadores, de manera que el Estado consiga que se realice la obra al precio más bajo.[8]

De ordinario, el mecanismo que el Gobierno utiliza para la adquisición de bienes y servicios es la **subasta pública formal o tradicional**.[9] En R&B Power v. ELA, 170 DPR 606 (2007) describimos, en términos generales, cómo es el procedimiento formal de subasta. A tales efectos señalamos que:

> [E]l procedimiento de subasta formal consta de varias etapas, a saber: [1] la preparación por parte del ente gubernamental de los pliegos de condiciones y especificaciones, [2] el aviso de subasta al público, [3] el recibo y posterior apertura pública de las propuestas selladas recibidas, [4] la evaluación y el estudio de las mismas por un comité evaluador, [5] la recomendación del comité respecto a la adjudicación de la buena pro, [6] la adjudicación de ésta y la notificación a todos los licitadores. **Una vez sometidos los pliegos de licitación y abiertos éstos, los mismos no admiten modificaciones.** La apertura de los pliegos de licitación se efectúa públicamente ante todos los licitadores. **No hay cabida en este proceso para la negociación de los términos sometidos entre agencia y licitador.**[10]

En ese contexto, hemos señalado que en la etapa anterior a la apertura de las licitaciones es indispensable cumplir con el requisito de transparencia para que haya una

---

[8] Íd.; Accumail P.R. v. Junta Sub. AAA, supra, pág. 827; Empresas Toledo v. Junta de Subastas, supra, pág. 779; L.P.C. & D., Inc. v. A.C., 149 DPR 869, 875 (1999); RBR Const., SE v. Aut. De Carreteras, supra, págs. 848-849.

[9] R&B v. ELA, 170 DPR 606, 620 (2007) citando a W.N. Keyes, Government Contract, Minnesota, West Plublishing Co., 1986, Sec. 14.1, pág. 152.

[10] Íd., pág. 621. (Énfasis nuestro).

competencia efectiva y honesta del proceso.[11] Con ello, se exige que el elemento de secretividad esté presente durante el proceso de adquisición de bienes y servicios.[12] La anulación arbitraria de una subasta válidamente celebrada claramente derrota este objetivo.[13] Pues, una vez se abren las propuestas, todos los licitadores conocen las cotizaciones de sus competidores. En consecuencia, los licitadores con más poder adquisitivo podrían aprovechar la oportunidad para reducir sus propuestas en una segunda subasta, eliminando así a sus contendientes.[14] Por tal razón, la anulación indebida de una subasta puede provocar la competencia desleal en el proceso de licitación y desalentar a otros licitadores en posteriores procesos de subastas gubernamentales.[15]

Allí, también distinguimos el proceso de subasta formal del proceso **"request for proposal" (RFP)** o **requerimiento de propuestas.** Señalamos que el "RFP" es una alternativa cuando se trata de bienes o servicios especializados que involucran aspectos altamente complejos o cuando existen escasos competidores cualificados.[16] Al utilizar este mecanismo es legítimo que la entidad gubernamental entre en una negociación con los licitadores mientras recibe y evalúa las propuestas que han sido

---

[11] Accumail PR v. Junta de Subastas de AAA, supra, pág. 827; RBR Const., SE v. Aut. De Carreteras, supra, pág. 849.
[12] Íd.; Véase, además, R&B v. ELA, supra, pág. 619.
[13] Íd.
[14] Íd.
[15] Íd.
[16] Caribbean Com. v. Pol. de PR, supra, pág. 996; R&B Power, supra, págs. 621-622.

sometidas.[17] A diferencia del procedimiento de subasta formal, el "RFP" permite la compra negociada y confiere a los licitadores la oportunidad de revisar y modificar sus ofertas antes de la adjudicación de la buena pro.[18] Sin embargo, al igual que el proceso de subasta formal, el "RFP" debe contener los parámetros que se utilizarán para la adjudicación del contrato.[19] Es decir, los requerimientos, términos y condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta.[20] También, se ha validado el proceso híbrido mediante el cual se cumplen todos los requisitos de una subasta formal pero se incorporan mecanismos de aclaración y participación propios de una subasta informal.[21] En cuyo caso es necesario que, como toda subasta gubernamental, las adquisiciones se lleven a cabo con la misma transparencia, eficiencia y probidad.[22]

Ahora bien, en nuestra jurisdicción no hay una legislación especial que regule estos procedimientos. Por ello, la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU) dispone que los procedimientos de subasta serán informales y que tanto su reglamentación como sus términos serán establecidos por las

---

[17] J.C. Mc Bride & T.J. Touhey, Government Contracts: Cyclopedic Guide to Law, Administration, Procedure (W.A.I. Wilson, ed.) Washington D.C., Lexis Nexis, 2016, págs. 9-10.
[18] Íd.; R&B Power, supra, pág. 621.
[19] Íd., pág. 10.
[20] Íd.
[21] Caribbean Communications v. Pol. de P.R., supra.
[22] Íd., pág. 998.

agencias.[23] En ese contexto, las agencias gubernamentales tienen la facultad de aprobar un reglamento para establecer el procedimiento y las guías que se han de seguir en sus propias subastas.[24] A ese tenor, las subastas municipales se rigen por la <u>Ley de Municipios Autónomos de Puerto Rico</u>.[25] La referida legislación establece los procedimientos a seguir para la celebración y adjudicación de subastas municipales. Específicamente, el Art. 10.006 dispone que:

> [c]uando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. En el caso de ventas o arrendamiento de bienes muebles e inmuebles adjudicará en favor del postor más alto. **La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega,** la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones **que se hayan incluido en el pliego de subasta.**[26]

La Ley establece que cuando se requieran cotizaciones o subastas para la compra de bienes muebles, suministros, servicios u obras, el funcionario o empleado municipal tendrá la responsabilidad de solicitar, recibir y aceptar las cotizaciones requeridas. Subsiguientemente, éste deberá escribir, en toda la documentación pertinente, en forma legible y clara, su nombre completo y título, y firmar la

---

[23] 3 LPRA sec. 2169.
[24] <u>Empresas Toledo v. Junta de Subastas</u>, supra, pág. 780; <u>L.P.C. & D., Inc. v. A.C.</u>, supra, pág. 875.
[25] 21 LPRA sec. 4001 <u>et seq</u>.
[26] Íd., sec. 4506. (Énfasis nuestro).

verificación de exactitud y corrección de los estimados de costo.[27] Cabe resaltar, que el estatuto **prohíbe la alteración, en algún modo, de las cotizaciones, certificaciones o documentos relacionados con las cotizaciones, adjudicación o desembolso de fondos.**[28]

De acuerdo con la autoridad conferida y con el propósito de reglamentar el proceso de subastas municipales, la Oficina del Comisionado de Asuntos Municipales (OCAM) promulgó el Reglamento para la Administración Municipal (Reglamento Núm. 7539).[29] El referido reglamento exige la celebración de una subasta pública para toda construcción, obra o mejora pública cuyo costo total exceda de cien mil ($100,000.00) dólares.[30] De ser así, el municipio redactará las especificaciones, de manera que los pliegos contengan expresa y claramente las especificaciones según las necesidades del requirente.[31] Recibidas las ofertas en sobres sellados, se estampará un sello con la fecha y hora del recibo y "**[l]os mismos se retendrán y no se abrirán bajo ninguna circunstancia hasta la fecha y hora fijada para su apertura**".[32] Luego de sometida la propuesta, se puede permitir que el licitador corrija o modifique su propuesta pero "los cambios en los pliegos de las ofertas deberán ser debidamente justificados

---

[27] Íd.
[28] Íd.
[29] Reglamento para la Administración Municipal, supra.
[30] Íd. pág. 111.
[31] Íd. pág. 115.
[32] Íd. pág. 118. (Énfasis nuestro).

y certificados"[33] porque "[d]e lo contrario, la oferta quedará invalidada para la partida o partidas correspondientes".[34] Ahora bien, luego de que ocurra el proceso de apertura de pliegos, el reglamento dispone que **"[n]o se permitirá bajo ninguna circunstancia, el retiro de una oferta o efectuarse cambios o modificaciones a la misma después de haber sido abierta y leída en público"**.[35]

Finalmente, hemos expresado que las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración de acuerdo con los parámetros establecidos por la ley y los reglamentos aplicables.[36] En este sentido, en el ejercicio de sus facultades se les reconoce discreción al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general.[37] Como consecuencia de ello, los tribunales no debemos intervenir con el rechazo de una propuesta o la adjudicación de una subasta, salvo que la determinación administrativa adolezca de un abuso de discreción, arbitrariedad o irracionabilidad.[38]

---

[33] Íd. pág. 119.
[34] Íd.
[35] Íd., pág. 122. (Énfasis nuestro).
[36] Aut. Carreteras v. CD Builders, Inc. 177 DPR 398, 408 (2009), citando a A.E.E. v. Maxon, 163 DPR 434, 444 (2004). Véanse, además, Empresas Toledo v. Junta de Subastas, supra, pág. 779; Torres Prods. v. Junta Mun. Aguadilla, 169 DPR 886, 898 (2007).
[37] Empresas Toledo v. Junta de Subastas, supra, pág. 779.
[38] Aut. Carreteras v. CD Builders, supra, pág. 408; Empresas Toledo v. Junta de Subastas, supra, págs. 783-784; Torres Prods. v. Junta Mun.

Según este marco normativo, procedemos a resolver si erró el foro apelativo al ordenar una nueva subasta o si por el contrario debió adjudicarle a CD Builders los trabajos concedidos a C.J.O. Construction.

III

Estamos frente a una controversia que requiere determinar si la propuesta de C.J.O. Construction cumplió con las especificaciones establecidas en la Invitación Núm. 11-12-13 y, si la Junta de Subastas del Municipio tenía facultad para permitir un cambio en la propuesta de uno de los licitadores una vez se dio el proceso de apertura de los pliegos. En este sentido, al sopesar esos factores, nuestro análisis final debe limitarse a determinar si el permitir la corrección constituye un error subsanable o no.

Como se desprende de los hechos reseñados, el Municipio emitió una Invitación a Subasta Formal el día designado para ello, recibió las ofertas selladas y celebró un acto de apertura de pliegos. No sin antes llevar a cabo un Reunión Pre-subasta en la que se discutieron asuntos relevantes al proceso, y en la que se orientó a todos los licitadores presentes y, además, se contestaron preguntas. Posteriormente, llevó a cabo la evaluación y estudio de las ofertas y, tras la recomendación de un Comité Evaluador, escribió y permitió a C.J.O. Construction que corrigiera el precio en uno de los renglones, modificando así el precio final de la propuesta. Luego de que el licitador corrigió

Aguadilla, supra, pág. 898; RBR Const., S.E. v. A.C., supra, págs. 856-857.

el error y entregó su propuesta enmendada, el Municipio procedió a notificar a los demás licitadores la determinación de la Junta de Subastas.

No cabe duda, de que el procedimiento de subasta en controversia incumplió con los requisitos establecidos en la Ley de Municipios Autónomos, supra, y en el Reglamento Núm. 7539, supra, relativos a la adjudicación de una subasta formal. Al evaluar los preceptos de ambos estatutos, encontramos que tanto la Ley como el Reglamento exigen que antes de someter una cotización o propuesta el licitador debe verificar y corroborar que la cotización requerida cumpla con los parámetros establecidos. Ello, debido a que ambos preceptos expresamente prohíben la alteración en algún modo de las cotizaciones o documentos relacionados. A tenor con esta normativa, la Invitación Núm. 11-12-13 expresamente dispone las condiciones e instrucciones que ha de regir el proceso de subasta en controversia. A tales efectos, en esta se dispone específicamente que "[l]os licitadores deberán revisar sus propuestas antes de someterlas, ya que **no se podrá subsanar errores contenidos en éstas**".[39] Además, la misma señala que "[n]o se permitirá bajo ninguna circunstancia, el retiro de una oferta **o efectuarse cambios o modificaciones a la misma después de haber sido abierta y leída en público**".[40] Cabe señalar, que en la referida invitación, el Municipio

---

[39] Véase Apéndice III del recurso de certiorari, pág. 22. (Énfasis nuestro).
[40] Íd., pág. 23. (Énfasis nuestro).

incluyó unas guías que la Junta de Subastas debía de seguir en caso de encontrar alguna de las circunstancias provistas. Por ejemplo, el párrafo titulado "Competencia Adecuada" dispone que "[c]uando en una subasta solamente se reciba la cotización de un solo licitador y se entienda que su precio es irrazonable o no cumpla con lo requerido por la Junta, dicha oferta será rechazada por entenderse que no hubo competencia adecuada y deberá celebrar una segunda subasta".[41]

Conforme a lo anterior, ciertamente C.J.O. Construction fue quien ofreció un mejor precio, aun después de corregido el error. Sin embargo, ello conllevó hacer una modificación en el pliego de la oferta que ya había sido sometida y abierta públicamente. Lo anterior puso en riesgo los principios de sana competencia y transparencia que deben permear los procesos de subastas en nuestro ordenamiento.[42] Por consiguiente, ello tuvo el efecto de invalidar la propuesta, según lo establece el propio reglamento municipal y las instrucciones contenidas en la Invitación a Subasta Formal Núm. 11-12-13. En ese sentido, avalar la determinación de la Junta y permitir que C.J.O. Construction rectifique el error numérico dejaría sin efecto las pautas ya establecidas en nuestro ordenamiento

---

[41] Íd., pág. 24. (Énfasis nuestro).

[42] Nótese que, según expresamos anteriormente, la propuesta formulada inicialmente por C.J.O. Construction fue de $573,000.00 por 400 yardas cúbicas. Tras corregir el alegado error numérico, la referida compañía cotizó 600 yardas cúbicas por $588,000.00.

jurídico en cuanto a cómo deben regir los procesos de subasta pública.

Cónsono con lo anterior, aunque la Junta de Subastas tiene la facultad para adjudicar a favor del postor razonable más bajo, ello no puede ir en contra del principio de libre competencia; mucho menos atentar contra el interés y la confianza pública que reviste dicho proceso. Además, al actuar de esa manera, el Municipio estaría yendo contra sus propios actos ya que las instrucciones y especificaciones de cómo se llevaría el proceso fueron establecidas por el propio Municipio en la referida invitación. Por consiguiente, resolvemos que el permitir la corrección del error numérico y someter una propuesta enmendada, luego de haberse efectuado el proceso de subasta, constituye un error insubsanable que requiere la descalificación de la propuesta.

IV

Por los fundamentos antes expuestos, se revoca la Sentencia del Tribunal de Apelaciones que ordena la celebración de una nueva subasta. Por consiguiente, se devuelve el caso de autos a la Junta de Subastas del Municipio para que, conforme a los pronunciamientos vertidos en esta Opinión, proceda a evaluar las ofertas o licitaciones restantes ante su consideración. En consecuencia, adjudique la subasta a favor del licitador que cumpla con los requisitos, según los parámetros

establecidos en la ley y reglamentos de adjudicación aplicables.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

CD Builders, Inc.
    Peticionario

                          CC-2014-0125    *Certiorari*

       v.

Municipio de Las Piedras
      Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 31 de agosto de 2016.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones que ordena la celebración de una nueva subasta. Por consiguiente, se devuelve el caso de autos a la Junta de Subastas del Municipio para que, conforme a los pronunciamientos vertidos en esta Opinión, proceda a evaluar las ofertas o licitaciones restantes ante su consideración. En consecuencia, adjudique la subasta a favor del licitador que cumpla con los requisitos, según los parámetros establecidos en la ley y reglamentos de adjudicación aplicables.

Así lo pronunció y manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente. Aunque una mayoría de este Tribunal analiza y resuelve de manera atinada lo referente a la descalificación de la propuesta de C.J.O. Construction, estimo que ésta ignora los errores puntuales señalados por CD Builders, Inc. (la parte peticionaria). Surge con meridiana claridad que la parte peticionaria plantea que el Tribunal de Apelaciones erró al ordenar la celebración de una nueva subasta. No obstante, en la opinión mayoritaria, para todos los efectos, se opta por

avalar el dictamen del foro apelativo intermedio. Ello, al ordenarle a la Junta de Subasta evaluar, nuevamente, las propuestas en cuestión. Tal proceder provoca diversas interrogantes. ¿Por qué castigar con un nuevo procedimiento de evaluación a un licitador que sí cumplió con los requisitos de la subasta? ¿No es eso imputarle a dicho licitador el error cometido por C.J.O. Construction y el Municipio de Las Piedras?

En esencia, los procedimientos de subasta tienen como fin atraer la mayor cantidad de licitadores -que reúnan los requisitos correspondientes- con tal de estimular la competencia libre y transparente y posibilitar la adquisición de los bienes y servicios de mayor calidad al mejor precio. Estimo que el error que hoy nos lleva a decretar la descalificación de la propuesta de C.J.O. Construction no es uno suficiente para invalidad el procedimiento de subasta que se llevó a cabo. Me hago eco de las palabras del Juez ponente cuando expresa que "la anulación indebida de una subasta puede provocar la competencia desleal en el proceso de litigación y desalentar a otros licitadores en posteriores procesos de subastas gubernamentales". *Opinión*, en la pág. 9. A esos efectos, surge de los hechos que, al margen de la referida enmienda, el procedimiento de subasta se celebró conforme a Derecho. Por ende, tras descalificar la propuesta de C.J.O. Construction, soy del criterio que correspondía adjudicar la subasta al siguiente mejor postor.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo