ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **SKYTEC, INC.**<br><br>Recurrente<br><br>v.<br><br>**MUNICIPIO AUTÓNOMO DE BAYAMÓN; HON. JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE BAYAMÓN**<br><br>Recurrido<br><br><br>**CARIBE TRACK, CORP.**<br><br>Proponente Rechazado-Parte con Interés | KLRA202400137 | **REVISIÓN** procedente de la **Junta de Subastas del Municipio Autónomo de Bayamón**<br><br>Subasta Núm.: **25 Serie 2023-2024**<br><br>Sobre: Impugnación de Rechazo de Ofertas de la Subasta Núm. 25 Serie 2023-2024, para la Adquisición de Sistema Automático de Conteo de Pasajeros (APC) para el Servicio de Transporte Colectivo del Municipio de Bayamón |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de abril de 2024.

Comparece ante nos Skytec, Inc. (en adelante, parte recurrente o Skytec), mediante un *Recurso de Revisión Judicial*, y nos solicita que dejemos sin efecto la *Resolución Núm. 78* (en adelante, Resolución) emitida el 7 de marzo de 2024, por la Junta de Subastas (Junta de Subastas) del Municipio Autónomo de Bayamón (Municipio) (en conjunto, parte recurrida), notificada y archivada ese mismo día, respecto a la Subasta Núm. 25 Serie 2023-

2024.[1] Por medio de dicho dictamen, la Junta de Subastas rechazó unánimemente las propuestas de la parte recurrente[2] y de Caribe Track, Corp.[3] (en adelante, Caribe Track) (en conjunto, licitadores) para adquirir un Sistema Automático de Conteo de Pasajeros (APC, por sus siglas en inglés) (en adelante, Sistema Automático o APC) y, consecuentemente, no les adjudicó la buena pro.

Por los fundamentos que expondremos a continuación, resolvemos confirmar la *Resolución* recurrida.

**I.**

La presente controversia tiene su génesis el 26 de octubre de 2023 cuando el Municipio publicó un *Aviso de Subasta* en los periódicos Primera Hora y El Expresso sobre la Subasta Núm. 25 Serie 2023-2024,[4] según surge de la *Minuta* sobre la reunión mandatoria pre-subasta fechada 1 de noviembre de 2023.[5] Lo anterior, con el propósito de notificarle a posibles postores que podían someter ofertas para la adquisición de un Sistema Automático para el Servicio de Transporte Colectivo del Municipio de Bayamón.

Posteriormente, el 1 de noviembre de 2023, se celebró una reunión mandatoria pre-subasta, a la cual acudieron los licitadores.[6] En síntesis y en lo pertinente, durante dicha reunión el Sr. Emanuel R. Gómez Vélez, Director de la Oficina de Planificación, Ordenamiento Territorial y Administración de Fondos Federales (en adelante, Director de la Oficina de Planificación), les leyó a los licitadores las especificaciones de los dispositivos, una de estas siendo la siguiente:

---

[1] Apéndice del *Recurso de Revisión Judicial*, Anejo 1, págs. 1-2; *Íd.*, Anejo 2, págs. 3-6.
[2] *Íd.*, Anejo 3, págs. 10-89.
[3] *Íd.*, Anejo 4, págs. 90-153.
[4] *Íd.*, Anejo 3, pág. 46. Nótese que la publicación del *Aviso de Subasta* en el periódico El Expresso fue desde el 26 de octubre de 2023 hasta el 1 de noviembre de 2023.
[5] *Íd.*, págs. 43-55.
[6] *Íd.*

**k. En cuanto a otras especificaciones:**

    **a. deberá incluir los gastos del servicio y del mantenimiento por un (1) año.**

    **b. el equipo deberá ser removible para poder transferir los sistemas de conteo a otras unidades[.]**

    **c. el equipo deberá funcionar y medir, <u>completamente mediante sensores</u>. Tanto en la puerta de entrada de los pasajeros como en la puerta de la rampa para personas con alguna diversidad funcional.**[7] (Énfasis y subrayado en el original).

De la *Minuta* también se desprende que, a la pregunta de la parte recurrente "**2. [c]on relación a las certificaciones federales en cumplimiento con el pliego. Favor de especificar cuáles son [las] mandat[o]rias para esta subasta y de no estar en el pliego favor incluirlas**",[8] (Énfasis en el original), la Junta de Subastas respondió:

**2. Las cláusulas federales por iniciar y certificar son aquellas que se encuentran en el pliego. Las primeras páginas deben iniciarse y las últimas dos (2) p[á]ginas son certificaciones que deben ser completadas. Cabe destacar que los licitadores, de ser agraciados, deben cumplir con estas en su totalidad. En el caso de la cláusula de Disadvantage Business Enterprise (DBE), adicional [a] cumplir con las cláusulas presentes en el pliego, en su oferta el licitador debe indicar qui[é]n será su DBE**.[9] (Énfasis en el original).

Luego de ello, el 21 de noviembre de 2023, se sostuvo la apertura de la subasta.[10] A esta comparecieron ambos licitadores y sometieron sus respectivas propuestas fechadas el 21 de noviembre de 2023[11] y 17 de noviembre de 2023,[12] respectivamente.

Ulteriormente, el Director de la Oficina de Planificación estuvo a cargo de evaluar las ofertas recibidas.[13] De su análisis surgió que

---

[7] *Íd.*, pág. 47.
[8] *Íd.*, pág. 52.
[9] *Íd.*, pág. 53.
[10] *Íd.*, pág. 51.
[11] *Íd.*, págs. 10-89.
[12] *Íd.*, Anejo 4, págs. 90-153.
[13] *Íd.*, Anejo 2, págs. 4-5.

ninguna de las ofertas recibidas de los licitadores satisfizo los requerimientos establecidos en el pliego de subasta ni con los requisitos federales de DBE, y, por ello, no recomendó adjudicar la Subasta Núm. 25 Serie 2023-2024. En cambio, propuso celebrar una subasta nueva para garantizar la adquisición de los sistemas automáticos necesarios. Lo anterior pues, según determinó el Director de la Oficina de Planificación, la parte recurrente no cumplió con la especificación de proporcionar un Sistema Automático para ambas puertas del vehículo como se detallaba en el pliego, sino que solo incluía un sistema por vehículo. En cuanto a Caribe Track, su propuesta no satisfizo la condición de ofrecer un Sistema Automático completamente mediante sensores, sino que su propuesta incluyó un sistema con sensores para la puerta principal y un botón para la detección de activación de rampa para la puerta trasera.

Así las cosas, el 7 de marzo de 2024, la Junta de Subastas emitió una *Resolución*, notificada y archivada en autos ese día, en la que rechazó las aludidas propuestas realizadas para la Subasta Núm. 25 Serie 2023-2024.[14]

Inconforme con tal determinación, el 18 de marzo de 2024, la parte recurrente presentó un *Recurso de Revisión Judicial* en el caso de autos, en el que solicitó dejar sin efecto la *Resolución* emitida por la Junta de Subastas el 7 de marzo de 2024, notificada y archivada en autos ese mismo día. En específico, le imputó a la Junta de Subastas la comisión del siguiente error:

> **PRIMER Y ÚNICO ERROR: ERRÓ LA JUNTA DE SUBASTAS AL RECHAZAR LA PROPUESTA DE SKYTEC Y NO ADJUDICARLE LA BUENA PRO A ESTA A PESAR DE QUE CUMPLIÓ CON TODOS LOS REQUISITOS MANDATORIOS DEL PLIEGO DE SUBASTA.**

---

[14] *Íd.*, págs. 3-6.

En síntesis, la parte recurrente planteó que debemos dejar sin efecto la *Resolución* recurrida, pues sostuvo que cumplió con todas las exigencias técnicas del equipo y la Junta de Subastas estaba impedida de considerar la certificación de DBE como criterio mandatorio para adjudicar y/o rechazar una propuesta. En cuanto al cumplimiento de los requerimientos del equipo técnico, la parte recurrente alegó que no era requisito incluir como parte de la subasta ofrecer dos (2) equipos APC, sino que uno (1) era suficiente para contabilizar los pasajeros que accedieran del vehículo a través de la puerta de pasajeros y la rampa de impedidos. Por otra parte, sostuvo que la certificación DBE no fue requerida como parte de los pliegos de subasta, y, aun así, había certificado su cumplimiento.

Por su parte, el 4 de abril de 2024, compareció la parte recurrida por medio del *Alegato de la Parte Recurrida, Municipio Autónomo de Bayamón* y planteó que, de los documentos sometidos por la parte recurrente como parte de su oferta, no surgía que el Sistema Automático contabilizara los pasajeros que entrarían por las dos puertas del vehículo. Por el contrario, la parte recurrida sostuvo que en la oferta de la parte recurrente se mencionó un (1) APC por unidad, cuando en la reunión mandatoria pre-subasta se reiteró que el equipo debía funcionar y medir completamente mediante sensores, tanto en la puerta de la entrada como en la puerta de la rampa. Además, la parte recurrida alegó que aun cuando en la propuesta de la parte recurrente se alude al sensor de la rampa, no se indica ni se aclara que el equipo propuesto por dicho licitador tiene la capacidad de conectarse al sensor de la rampa para detectar la información de subidas y bajadas. Lo anterior, pues, conforme a lo que sostuvo la parte recurrente, de la oferta surge que el "**Trolley cuenta con (1) sensor de Rampa ya en la unidad vehicular del municipio**" y "**[de]l trolley no tener sensor de**

**rampa debe adquirir (1) APC adicional**".[15] (Énfasis en el original). Por ello, concluyó la parte recurrida, no era razonable determinar que la parte recurrente satisfizo las especificaciones requeridas.

Finalmente, la parte recurrida sostuvo que durante la reunión pre-subasta, se aclaró que el licitador tenía que certificar quién sería su DBE. Específicamente, la parte recurrida arguyó que lo que la parte recurrente había informado era que no podía participar en la aludida certificación e identificó una empresa que podría contratar, de ser necesario, lo cual no cumplía con la reglamentación federal aplicable.

Luego de revisar los documentos que obran en autos, estamos en posición de resolver, primero delimitando el trasfondo normativo aplicable.

**II.**

**A.**

El procedimiento de contratación de servicios por las agencias gubernamentales está revestido del más alto interés público. *Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Infraestructura de Puerto Rico*, 206 DPR 803, 820 (2021); *ECA Gen. Contrac. v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018); *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 404 (2009). Los dos (2) tipos de subastas utilizados para que tanto el gobierno central como el municipal adquieran bienes y servicios son la subasta tradicional y la subasta de requerimiento de propuestas o *request for proposal*. *Puerto Rico Asphalt, LLC v. Junta de Subastas del Municipio de Naranjito*, 203 DPR 734, 737 (2022); *Puerto Rico Eco Park, Inc. v. Municipio de Yauco (Junta de Subastas)*, 202 DPR 525, 531 (2019).

---

[15] *Íd.*, Anejo 3, pág. 20.

La tradicional o formal consiste en varias etapas; a saber, la preparación de los pliegos de condiciones y especificaciones por parte del ente gubernamental, el aviso de subasta al público, el recibo y la apertura pública de las propuestas selladas, la evaluación y el estudio de estas por un comité evaluador, la recomendación del comité sobre la adjudicación de la buena pro, su adjudicación y la notificación a todos los licitadores. *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 345 (2016) (citando a *R & B Power v. E.L.A.*, 170 DPR 606, 621 (2007)). Una vez se someten los pliegos de licitación y estos se abren, no se permiten modificaciones. *ECA Gen. Contrac. v. Mun. de Mayagüez, supra*, pág. 673. Además, la apertura de los pliegos de licitación se efectúa públicamente ante todos los licitadores. *R & B Power v. E.L.A., supra*, pág. 621. Lo anterior, pues una de las características de este proceso es el carácter secreto con el propósito de fomentar la existencia de una competencia leal y honesta, al impedir que un postor enmiende su propuesta para superar la de otro. *ECA Gen. Contrac. v. Mun. de Mayagüez, supra*, pág. 673; *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 995 (2009).

**Nótese que la agencia puede adoptar mecanismos que propicien el cumplimiento de las condiciones y los requerimientos incluidos en los pliegos previo a la entrega de las licitaciones**. *ECA Gen. Contrac. v. Mun. de Mayagüez, supra*, págs. 673-674. **Por ejemplo, el procedimiento formal de subasta puede incluir: (1) aclaraciones sobre cualquier ambigüedad en las especificaciones; (2) la celebración de reuniones pre-subasta;** (3) inspecciones en el lugar donde se instalará el producto o equipo, y (4) el suministro de modelos o muestras que puedan asistir al licitador a entender las especificaciones de la agencia. *ECA Gen. Contrac. v. Mun. de Mayagüez, supra*, pág. 674; *Caribbean Communications v. Pol. de P.R., supra*, 995-996.

Por otra parte, la subasta de requerimiento de propuestas es un proceso formal y flexible, el cual permite al oferente negociar con el gobierno central o municipal y enmendar o revisar las ofertas antes de la adjudicación del contrato. *Puerto Rico Eco Park, Inc. v. Municipio de Yauco (Junta de Subastas), supra*, págs. 531-532; *R & B Power v. E.L.A., supra*, pág. 621. Este procedimiento es común en casos sobre bienes o servicios especializados que involucran aspectos altamente complejos o cuando existen poco competidos cualificados. *Puerto Rico Eco Park, Inc. v. Municipio de Yauco (Junta de Subastas), supra*, pág. 532; *CD Builders v. Mun. Las Piedras, supra*, pág. 345.

Sin embargo, aunque ambos tipos de subastas son diferentes, las dos poseen características adjudicativas. *Puerto Rico Eco Park, Inc. v. Municipio de Yauco (Junta de Subastas), supra*, pág. 532. Además, en ambos casos, el propósito de las subastas es "proteger el erario, al fomentar la libre y diáfana competencia entre el mayor número de licitadores posibles". *Puerto Rico Asphalt, LLC v. Junta de Subastas del Municipio de Naranjito, supra*, pág. 737; *Transporte Rodríguez v. Jta. Subastas*, 194 DPR 711, 716 (2016). Así, se pretende maximizar la posibilidad de obtener el mejor contrato y se protegen los intereses y activos del pueblo contra la corrupción, el favoritismo, el descuido de otorgarse contratos y el dispendio. *Puerto Rico Asphalt, LLC v. Junta de Subastas del Municipio de Naranjito, supra*, pág. 737; *Aut. Carreteras v. CD Builders, Inc., supra*, pág. 404.

Por otra parte, el Artículo 2.040 del *Código Municipal de Puerto Rico*, Ley Núm. 107 del 13 de agosto de 2020 (Ley Núm. 107-2020), según enmendada, sec. 7216, establece que la Junta de Subastas se encargará de entender y adjudicar "todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de

servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración y otros". Cuando se trate de "compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo". Íd La Junta de Subastas realizará estas adjudicaciones tomando en consideración que las propuestas "sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta". Íd. De igual modo, la Junta podrá adjudicar a un postor que no necesariamente sea el más bajo o alto, si por ello se beneficia el interés público. Íd. En dicho caso, la Junta de Subastas deberá constar por escrito las razones beneficiosas al interés público que justifican tal adjudicación. Íd. Del mismo modo, la Junta de Subastas podrá rechazar la licitación o las licitaciones recibidas como resultado de una convocatoria, si el licitador carece de responsabilidad o tiene una deuda con el municipio, el gobierno estatal o el gobierno federal, o "**que la naturaleza o calidad de los suministros, materiales o equipo no se ajustan a los requisitos indicados en el pliego de la subasta, o que los precios cotizados se consideren como irrazonables o cuando el interés público se beneficie con ello**". Íd. (Énfasis suplido).

Igualmente, el Capítulo VIII, Parte II, Sección 12 (7) del Reglamento para la Administración Municipal de 2016, Reglamento Núm. 8873 de 19 de diciembre de 2016 (Reglamento Núm. 8873), págs. 112, 116-117, expresamente establece que:

> Al evaluar las ofertas ante su consideración, la Junta podrá encontrar una serie de ofertas que no cumplen la directriz general establecida, pero que podrían ser susceptibles de evaluación.

Las siguientes reglas se adoptan para ofrecerle a la Junta las guías que tendrán que seguir en las circunstancias previstas en ellas.

. . . .

(7)    **Rechazo Global**

**Se podrán rechazar todas las ofertas recibidas para una subasta en los siguientes casos:**

a) **no cumplan con las especificaciones;**
b) **no cumplan con las condiciones;**
c) ofrezcan precios irrazonables;
d) exista colusión entre todos los licitadores;
e) no ha dado atención y cumplimiento satisfactorio a contratos que le hayan sido otorgados anteriormente;
f) el licitador es deudor del municipio o el Estado Libre Asociado de Puerto Rico y no está acogido a un plan de pago;
g) el licitador ha sido convicto por delitos relacionados a malversación de fondos públicos, conforme la Ley Núm. 458-2000, según enmendada y otras que en lo sucesivo puedan ser aprobadas;
h) cualquiera otra causa justificada por la Junta. (Énfasis suplido y subrayado en el original).

Además, el Artículo V, Sección 3 (B)(7) del Reglamento de Subastas, Solicitudes de Propuestas, Solicitud de Cualificaciones, y Registro de Licitadores (Reglamento de Subastas), 21 de abril de 2022, pág. 64, dispone que:

a. **La Junta de Subasta podrá rechazar alguna licitación o las licitaciones que se reciban** como resultado de una convocatoria, cuando considere que el licitador carece de responsabilidad o tiene una deuda con el Municipio, el Gobierno de Puerto Rico o el Gobierno federal; **cuando la naturaleza o calidad de los suministros, materiales, equipos o servicios no se ajustan a los requisitos en el pliego**; cuando los precios cotizados se consideren como irrazonables; cuando el interés público se beneficie con ello; por cualquiera otra causa justificada por la Junta.

b. **Cuando la Junta de Subasta rechace las licitaciones recibidas o se declare desierta una subasta, la Junta podrá convocar una segunda subasta** o recomendar a la Legislatura Municipal que autorice atender el asunto administrativamente, ya sea utilizando los empleados y recursos municipales o mediante la contratación directa de la obra o servicio, cuando esto resulte más económico y ventajoso a los intereses del Municipio.

c. Se considerará contrario al Código Municipal y este Reglamento, la fragmentación en cantidades inferiores al valor real de una compra obra de construcción o venta de propiedad a la que deban aplicar los procedimientos de subasta, con la clara intención de adjudicar por el procedimiento de cotizaciones, excepto en los casos que claramente dispone por Ley. (Énfasis suplido).

Asimismo, el Artículo 2.040 (d) de la Ley Núm. 107-2020, *supra*, expresa que la Junta de Subastas:

[P]odrá declarar desierta una subasta cuando no comparezca ningún licitador. Cuando la Junta de Subasta rechace las licitaciones recibidas o se declare desierta una subasta, podrá convocar una segunda subasta o recomendar a la Legislatura Municipal que autorice atender el asunto administrativamente, ya sea utilizando los empleados y recursos municipales o mediante la contratación directa de la obra o servicio, cuando esto resulte más económico y ventajoso a los intereses del municipio.

Consecuentemente, los postores inconformes con la adjudicación de una subasta podrán acudir ante este Tribunal mediante el recurso de revisión judicial. Según el Artículo 1.050 de la Ley Núm. 107-2020, *supra*, sec. 7081, este Tribunal:

[R]evisará, el acuerdo final o adjudicación de la Junta de Subastas, el cual se notificará por escrito y mediante copia por correo escrito regular y certificado a la(s) parte(s) afectada(s). La solicitud de revisión se instará dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la copia de la notificación del acuerdo final o adjudicación.

Por último, nuestro máximo foro ha expresado que las agencias administrativas, por lo general, "se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración de acuerdo con los parámetros establecidos por la ley y los reglamentos aplicables". *CD Builders v. Mun. Las Piedras, supra*, pág. 348; *Aut. Carreteras v. CD Builders, Inc., supra*, pág. 408. Es por ello que se "les reconoce discreción al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés

público en general". *CD Builders v. Mun. Las Piedras, supra,* págs. 348-349; *Empresas Toledo v. Junta de Subastas,* 168 DPR 771, 779 (2006). Consecuentemente, salvo que la determinación administrativa adolezca de abuso de discreción, arbitrariedad o irracionabilidad, los tribunales no deben intervenir con el rechazo de una propuesta o adjudicación de una subasta. *CD Builders v. Mun. Las Piedras, supra,* pág. 349; *Empresas Toledo v. Junta de Subastas, supra,* págs. 783-784.

**III.**

Según se relató, Skytec le sometió a la Junta de Subastas su propuesta para la adquisición de un Sistema Automático para el Servicio de Transporte Colectivo del Municipio de Bayamón. Sin embargo, la Junta de Subastas rechazó la misma. Como parte de su dictamen, la Junta de Subastas reiteró los fundamentos del Director de la Oficina de Planificación para rechazarla y recomendar una nueva subasta; a saber, Skytec no satisfizo los requisitos federales de DBE y tampoco cumplió con la especificación de proporcionar un Sistema Automático para ambas puertas del vehículo como se detallaba en el pliego, sino que solo incluyó un sistema por vehículo.

Inconforme, la parte recurrente acudió en revisión ante nos.

Tras un análisis sosegado de la normativa aplicable, los hechos materiales y del expediente ante nuestra consideración, concluimos que la Junta de Subastas no incidió al rechazar la propuesta de la parte recurrente con relación a la Subasta Núm. 25 Serie 2023-2024.

Skytec arguyó que cumplió con todos los requisitos técnicos del equipo. Ello, pues, alegó que de una lectura del pliego de subastas surgía que se requería solamente un Sistema Automático y no dos (2) equipos APC. Por otra parte, Skytec también sostuvo que la certificación de DBE no era un criterio mandatorio porque no

fue requerida como parte de los pliegos de subasta, y, aun así, había certificado su cumplimiento.

Como reseñamos en la sección anterior, la función de la Junta de Subastas es entender y adjudicar las subastas tomando en consideración que las propuestas sean conforme, en parte, a las especificaciones y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta. Además, mediante una subasta formal, la Junta de Subastas puede llevar a cabo otros mecanismos para propiciar el cumplimiento con las condiciones y los requerimientos de dicho pliego tal como reuniones pre-subasta y aclarar ambigüedades en las especificaciones. A tenor con lo anterior, el Capítulo VIII, Parte II, Sección 12 (7) del Reglamento Núm. 8873, supra, págs. 116-117, expresamente permite el rechazo global, por el cual la Junta de Subastas puede rechazar todas las ofertas recibidas para una subasta por varias razones incluyendo cuando no se satisfacen las especificaciones y condiciones. De igual modo, el Artículo V, Sección 3 (B)(7) del Reglamento de Subastas, supra, pág. 64, permite el rechazo de alguna o múltiples licitaciones cuando los equipos no se ajustan a los requisitos del pliego. En dicho caso, la Junta de Subastas puede declarar desierta una subasta y convocar una segunda subasta o recomendarle a la Legislatura Municipal que autorice atender el asunto administrativamente.

En virtud del anterior análisis, los tribunales solo deben intervenir con las decisiones administrativas cuando adolecen de abuso de discreción, arbitrariedad o irracionabilidad.

En el presente caso surge del pliego de subasta que el equipo de Sistema Automático solicitado por la parte recurrida tenía que ser completamente mediante sensores, y de la *Minuta* de la reunión mandatoria pre-subasta también surge que, entre las

especificaciones del dispositivo leídas por el Director de la Oficina de Planificación durante la reunión pre-subasta, estuvo "**c. el equipo deberá funcionar y medir, <u>completamente mediante sensores</u>. Tanto en la puerta de entrada de los pasajeros como en la puerta de la rampa para personas con alguna diversidad funcional**".[16] (Énfasis y subrayado en el original). Sin embargo, lo que ofreció la parte recurrente incumplió con dichas especificaciones pues de la oferta de la parte recurrente solo se deprende que el precio ofrecido era por una "Unidad de APC-1 puerta", que el "**Trolley cuenta con (1) sensor de Rampa ya en la unidad vehicular del municipio**" y "**[de]l trolley no tener sensor de rampa debe adquirir (1) APC adicional**", sin más.[17] (Énfasis en el original). Nótese que la parte recurrente no aclaró que su equipo APC tenía la capacidad de conectarse al sensor de la rampa y al sensor de la puerta de pasajeros para detectar la información de subidas y bajadas de las mismas, y llevar el conteo necesario, hasta que presentó su recurso de revisión judicial ante nos.

Por otra parte, aunque la certificación DBE no era uno de los requisitos mandatorios del pliego de subasta, de la *Minuta* sobre la reunión pre-subasta surge claramente que ante la pregunta de Skytec, representada por la Sra. Nadja González; a saber, "**2. [c]on relación a las certificaciones federales en cumplimiento con el pliego. Favor de especificar cuáles son [las] mandat[o]rias para esta subasta y de no estar en el pliego favor incluirlas**",[18] (Énfasis en el original), la Junta de Subastas respondió que:

> **2. Las cláusulas federales por iniciar y certificar son aquellas que se encuentran en el pliego. Las primeras páginas deben iniciarse y las últimas dos (2) p[á]ginas son certificaciones que deben ser completadas. Cabe destacar que los licitadores, de ser agraciados, deben cumplir con estas en su**

---

[16] *Íd.*, pág. 47.
[17] *Íd.*, pág. 20.
[18] *Íd.*, pág. 52.

**totalidad. En el caso de la cláusula de Disadvantage Business Enterprise (DBE), adicional [a] cumplir con las cláusulas presentes en el pliego, en su oferta el licitador debe indicar qui[é]n será(n) su(s) DBE.**[19] (Énfasis en el original).

Sin embargo, la parte recurrente expresó que no podía participar en la certificación del programa DBE por razones económicas, pero que se comprometía a utilizar y/o contratar a varias de las empresas que aparecían en el listado de DBE para febrero del año 2022, de ser necesario.[20] Por lo tanto, contrario a las aclaraciones de la Junta de Subastas, la parte recurrente no indicó quién realmente era su DBE.

Ante todo lo anterior, queda patentemente claro que del pliego de subasta y/o de la *Minuta* sobre la reunión mandataria pre-subasta se desprendían las condiciones y especificaciones que debían incluir las propuestas sobre la Subasta Núm. 25 Serie 2023-2024 para la adquisición del Sistema Automático. No obstante, la parte recurrente no las satisfizo. Así las cosas, la Junta de Subastas no actuó mediando abuso de discreción, arbitrariedad o irracionabilidad, y, por ello, procede ceder la deferencia que merece la Junta de Subastas en el rechazo de la propuesta de la parte recurrente.

Consecuentemente, resulta forzoso concluir que la Junta de Subastas no erró al rechazar la propuesta de la parte recurrente respecto a la Subasta Núm. 25 Serie 2023-2024.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

---

[19] *Íd.*, pág. 53.
[20] *Íd.*, pág. 83.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones