Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| **SUPER ASPHALT PAVEMENT, CORP**<br><br>Recurrente<br><br>v.<br><br>**JUNTA DE SUBASTAS DEL MUNICIPIO AUTONOMO DE GUAYNABO**<br><br>Recurrida | KLRA202300367 | **REVISION JUDICIAL**<br>Procedente del Municipio Autónomo de Guaynabo, Oficina de Secretaría Municipal<br><br><br>Sobre: **SUBASTA**: 24-F-010A ADQUISICIÓN DE HORMIGON ASFÁLTICO |

Panel integrado por su presidenta la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio.

Pérez Ocasio, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de septiembre de 2023.

La corporación Super Asphalt Pavement recurre ante nos para que dejemos sin efecto la adjudicación hecha por la Junta de Subastas del Municipio de Guaynabo, el 3 de julio de 2023, notificada el 6 del mismo mes y año. Mediante la misma, el referido organismo otorgó la Subasta Núm. 24-F-010A a favor de *Puerto Rico Asphalt, LLC.*

Por los fundamentos que expondremos a continuación, *se confirma la resolución administrativa recurrida.*

**I.**

El Departamento de Obras Públicas de Guaynabo, en adelante Departamento, solicitó la celebración de una subasta, con el fin de adquirir hormigón asfáltico para varios trabajos en el Municipio. A esos fines, el 15 de marzo de 2023, se publicó el aviso para la

Subasta Núm. 24-F-010A.[1] En respuesta, tres (3) licitadores sometieron ofertas: Super Asphalt Pavement Corp, en adelante Super Asphalt o recurrente; Puerto Rico Asphalt, LLC, en adelante PR Asphalt y Professional Asphalt, LLC, en adelante Professional Asphalt. El 13 de abril de 2023, se celebró la subasta en cuestión. El menor postor de los renglones cotizados fue el aquí recurrente. A continuación, se detallan los renglones que se tomaron en consideración con las distintas ofertas de los licitadores:[2]

| REGLÓN | DESCRIPCIÓN | SUPER ASPHALT CORP | PR ASPHALT LLC | PROFESSIONAL ASPHALT |
|---|---|---|---|---|
| A. 1033827 | Hormigón asfáltico entregado al proyecto, regado y compactado tipo S-1, B-1 y V-B (no reciclado) ton | $114.00 | $150.00 | $165.00 |
| B. 1033829 | Hormigón asfáltico tomado en planta tipo S-1, B-1 y V-B (no reciclado) ton | $83.00 | $89.00 | $89.00 |
| C. 1009748 | Primer para asfalto (drom) | $430.00 | $440.00 | $1,000.00 |

Así las cosas, el 3 de julio de 2023, la Junta de Subastas del Municipio Autónomo de Guaynabo, en adelante Junta o recurrida, adjudicó la buena pro a PR Asphalt.[3] Del expediente administrativo surge que la Junta acogió la recomendación que le hizo la Directora de Obras Públicas del Municipio Autónomo de Guaynabo, la Ingeniera Madeline Ortiz Morales, en adelante Directora, y no adjudicó la subasta al menor postor, a saber, Super Asphalt.[4] En su recomendación, la Directora expuso que no favorecía a Super Asphalt por las dificultades que enfrentó el Departamento durante la vigencia del contrato con el recurrente, en el año fiscal 2022-2023; entre ellas: (1) falta del material llamado *primer*; (2) problemas con el recogido del hormigón asfáltico y (3) hormigón asfáltico entregado

---

[1] Apéndice del recurso, pág. 13.
[2] Id., pág. 4.
[3] Id. págs. 1-11.
[4] Id. págs. 4-7.

en condiciones inutilizables.[5] En apoyo a esas alegaciones, la Directora adjuntó a su *"Recomendación"* vasta documentación que evidenció las comunicaciones con el recurrente, y los reclamos que se le hicieron mediante cartas y correos electrónicos.[6]

Inconforme con la referida adjudicación, el 17 de julio de 2023, el recurrente presentó ante esta curia una *"Solicitud de Revisión Judicial"*. En ella, nos hace el siguiente señalamiento de error:

> Cometió grave error la Junta de Subasta del Municipio Autónomo de Guaynabo que invalida su adjudicación por ser un error craso de derecho que demuestra perjuicio y parcialidad, al no adjudicar la subasta al licitador más bajo en precio, a base de una justificación incorrecta y sin corroboración en abierta violación a los más elementales principios de buena administración pública, despilfarrando el erario público y en grave perjuicio de los mejores intereses del municipio autónomo de Guaynabo.

Ese mismo día, Super Asphalt presentó *"Moci[ó]n Corrigiendo Apéndices"*, en la que informó que los apéndices del recurso presentado fueron fotocopiados incorrectamente.

Posteriormente, el 31 de julio de 2023, la Junta compareció ante nos mediante un *"Alegato en Oposición de la Junta de Subastas del Municipio Autónomo de Guaynabo"*. Examinado lo anterior, el 9 de agosto de 2023, ordenamos a Puerto Rico Asphalt a que se expresara con relación al recurso de epígrafe. En cumplimiento, el 28 de agosto de 2023, la licitadora seleccionada presentó *"Oposición de Puerto Rico Asphalt LLC a la Solicitud de Revisión Judicial"*.

Con el beneficio de la comparecencia de las partes, y el expediente administrativo, procedemos a resolver.

---

[5] Id. pág. 5.

[6] Apéndice del *"Alegato en Oposición de la Junta de Subastas del Municipio Autónomo de Guaynabo"*, págs. 19-41. Cabe señalar que el recurrente no adjuntó la referida documentación en el apéndice del recurso de epígrafe, por lo que nos remitimos al alegato en oposición de la Junta.

**II.**

**A. Código Municipal de Puerto Rico de 2020**

La Ley 107 del 13 de agosto de 2020, 21 LPRA sec. 7001, *et seq.*, adoptó el *Código Municipal de Puerto Rico*, en adelante Código Municipal, derogando, a su vez, la Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81-1991, 21 LPRA sec. 4001, *et seq.* (derogada). Dicho código "[d]eclara política pública proveer a los municipios de aquellos poderes y facultades necesarias para que puedan asumir su función fundamental a favor del desarrollo social y económico de sus jurisdicciones". A esos fines, el Capítulo V del Libro II del Código Municipal establece la facultad de las Juntas de Subastas de los municipios para entender y adjudicar todas las subastas que se requieran por ley, ordenanza o reglamentos. Art. 2.040, 21 LPRA sec. 7216. Como norma general, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico regula los procedimientos de subastas administrativas. Ley Núm. 38-2017, 3 LPRA sec. 9601, *et seq.* Sin embargo, la Sección 1.3 de la referida ley excluye a los municipios de su definición de "agencia". 3 LPRA sec. 9603. Es por esto que las subastas municipales se rigen, primordialmente, por el mencionado código.

El Tribunal Supremo de Puerto Rico ha expresado que la contratación de servicios por el gobierno debe buscar la ***"inversión adecuada, responsable y eficiente de los recursos del Estado"***. *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *ECA Gen. Contrac. v. Mun. de Mayagüez*, 200 DPR 665, 672 (2018). (Énfasis nuestro). Por ser el medio, que de ordinario el Estado utiliza para la adquisición de servicios, las subastas gubernamentales están revestidas de un alto interés público, toda vez que aspiran a promover una sana administración. *Super Asphalt v. AFI y otro*, supra, pág. 820; *ECA Gen. Contrac. v. Mun. de Mayagüez*, supra, pág. 672; *Génesis Security v. Dpto. Trabajo*, 204 DPR 986, 1008

(2020); *CD Builders v. Mun. Las Piedras,* 196 DPR 336, 343 (2016); *Transporte Rodríguez v. Jta. de Subastas,* 194 DPR 711, 716 (2016). El objetivo fundamental de un procedimiento de subasta es proteger el erario del Estado mediante la adquisición de servicios de calidad para el Gobierno al mejor precio posible. *ECA Gen. Contrac. v. Mun. de Mayagüez,* supra, pág. 678. De igual forma, propenden a que el Gobierno lleve a cabo sus funciones como comprador de una forma eficiente y honesta, y al margen del favoritismo, dispendio, extravagancia y descuido en el otorgamiento de los contratos. *Transporte Rodríguez v. Jta. de Subastas,* supra, pág. 717; *Aluma Const. v. AAA,* 182 DPR 776, 783 (2011).

Conforme a lo anterior, en el inciso (a) del Artículo 2.040 del Código Municipal, *supra,* se indica que las adjudicaciones se harán:

> [T]omando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, ***la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio*** y cualesquiera otras condiciones que se hayan incluido en el pliego de subastas". (Énfasis suplido).

El inciso citado dispone, de igual manera, que la Junta no está obligada a adjudicar la subasta al postor más bajo, si con ello "se beneficia el interés público". *Id.* En adición, establece que si la Junta otorga la subasta a un licitador que no sea el menor postor *"deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación". Id.*

**B. Reglamento para la Administración Municipal**

Por otro lado, el Reglamento para la Administración Municipal de la Oficina del Comisionado de Asuntos Municipales, Reglamento Núm. 8873 de 19 de diciembre de 2016, en adelante Reglamento Municipal, es un conjunto de normas que pretende fomentar la eficacia, uniformidad y buena mayordomía municipal. Capítulo I,

Sec. 3. En conformidad con el espíritu del Código Municipal de la salvaguarda e integridad de los procesos de subasta gubernamental, el Reglamento Municipal dispone que la Junta de Subastas adjudicará la subasta al licitador que:

a) *cumpla con los requisitos y condiciones de los pliegos de especificaciones*;

b) que sea la más baja en precio o que*, aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público* de esa adjudicación. Capítulo VIII, Parte II, Sec. 11. (Énfasis nuestro).

Además, el referido reglamento establece lo que constituye, para efectos evaluativos, un "licitador responsable":

(1) Tiene *recursos financieros adecuados* para cumplir su obligación o la habilidad de *obtener tales recursos.*

(2) Es capaz de *cumplir con los términos requeridos o propuestos de entrega*, según estipulados o requeridos.

(3) Tiene un *historial de cumplimiento satisfactorio*.

(4) Tiene un historial satisfactorio de *integridad y ética comercial.*

(5) Tiene la *organización, experiencia, contabilidad y controles operacionales* y destrezas técnicas necesarias para cumplir sus obligaciones.

(6) Tiene *equipo técnico y facilidades necesarias*, o la habilidad de obtener tal equipo y facilidades.

(7) Está de otra forma cualificado y sea elegible para recibir una adjudicación de conformidad con las leyes y reglamentos aplicables.

(8) Cualquier otro requerimiento impuesto por el Municipio para considerarlo como "licitador responsable". Capítulo VIII, Parte I, Sec. 5.

En lo que concierne al recurso de epígrafe, el Reglamento Municipal especifica que las "Subastas de Adquisición, Construcción y Suministros de Servicios No Profesionales", serán adjudicadas al licitador que goce de un satisfactorio historial de cumplimiento y al postor más bajo. Capítulo VIII, Parte II, sec. 11. No obstante, la misma disposición aclara que *si el licitador agraciado no es el postor más bajo, las garantías o calidad de*

*este deben ser superiores*, justificada así la decisión a favor del interés público. *Id.*

### C. Reglamento de Adquisición y Subastas de Guaynabo

El 9 de julio de 2009, el Municipio Autónomo de Guaynabo aprobó el Reglamento de Adquisiciones y Subastas, en adelante Reglamento de Guaynabo, mediante la Ordenanza Núm. 1, Serie 2009-2010.[7] El referido reglamento, ratifica la postura de las disposiciones estatutarias discutidas anteriormente, en cuanto a la evaluación de capacidad y cumplimiento de los licitadores en las subastas, qué constituye un licitador responsable y los deberes y facultades de la Junta. *Id.*, Artículo 2.011.

Sin embargo, el Reglamento de Guaynabo incluye una sección designada a la discreción que tiene el Presidente de la Junta, en adelante Presidente, para recibir asesoramiento. Parte III, sec. 3.007. En lo atinente al recurso de epígrafe, dispone la referida sección que el Presidente puede obtener asesoramiento de *funcionarios públicos, funcionarios del Municipio de Guaynabo o profesionales "con experiencia en asuntos municipales"*. *Id.*

Discutido el derecho aplicable a la controversia ante nos, procedemos a discutir el error imputado por el recurrente.

### III.

En su recurso, Super Asphalt alega que la adjudicación de la subasta número 24-F-010A fue contraria a derecho, por no haberse adjudicado al menor postor, y por haberse amparado en la recomendación de la Directora. Arguyó que la Junta basó su decisión únicamente en dicha recomendación, por lo que violó su debido proceso de ley, ya que no se le dio la oportunidad de refutar sus alegaciones.

---

[7] El reglamento de Guaynabo fue enmendado por la Ordenanzas Núm. 82, Serie 2010-2011 y Núm. 33, Serie 2015-2016.

Por su parte, la recurrida niega haber incumplido con los procedimientos que rigen las subastas, ya que su decisión fue conforme a sus facultades en ley. Además, argumenta que, conocido el historial de Super Asphalt con el Municipio, si se le hubiera adjudicado la subasta, se hubiese atentado contra los mejores intereses del erario del Estado.

De otra parte, PR Asphalt negó que se hubiese cometido el error imputado por Super Asphalt. Señaló que la Junta no erró al no darle la oportunidad a Super Asphalt de refutar la *"Recomendación",* ni al descartar la licitadora con la oferta más económica.

Ahora bien, entendidas las posturas de las partes, nos proponemos comenzar esta discusión evaluando los criterios de incumplimiento que hace el recurrente en su señalamiento de error, con relación a la manera que fue adjudicada la subasta en controversia. Super Asphalt plantea lo siguiente: (1) que la Junta erró al no adjudicar la subasta al menor postor (2) que la Junta incurrió en perjuicio y parcialidad en su adjudicación y (3) que la Junta basó erróneamente su decisión en una recomendación que imputaba hechos no corroborados. *No le asiste razón al recurrente.*

Sabido es que las subastas, máxime las gubernamentales, por el interés público que las reviste, requieren, como regla general, que se adjudiquen las mismas al menor postor. *Super Asphalt v. AFI y otro,* supra, pág. 737; *ECA Gen. Contrac. v. Mun. de Mayagüez,* supra, pág. 672; *Génesis Security v. Dpto. Trabajo,* supra, pág. 1008. 336. Ahora bien, tanto el Código Municipal como el Reglamento Municipal permiten que los municipios adjudiquen las subastas, en ciertas ocasiones, a un postor con una oferta más onerosa, siempre que exista justa causa y este sea un postor responsable. Los cuerpos estatutarios referidos describen al licitador responsable como uno que es capaz de cumplir con los términos de la prestación, cuenta

con la experiencia, los recursos adecuados y tiene un historial de cumplimiento satisfactorio.

Además, el Código Municipal y el Reglamento Municipal exigen que la adjudicación a un mayor postor este debidamente fundamentada. Podrá rechazarse la oferta más baja cuando el postor no cuenta con los recursos, equipos o facilidades necesarias para cumplir con los servicios pactados. A su vez, se podrá denegar dicha adjudicación cuando el licitador tenga un historial de incumplimiento. Artículo 2.040 del Código Municipal, supra; Capítulo VIII, Parte II, sec. 11, Reglamento Municipal, supra.

Surge del expediente que en su alegato en oposición, la Junta adjuntó varias cartas y correos electrónicos entre el Departamento y el recurrente, enviados en el curso de una contratación gubernamental del año fiscal 2022-2023, concedida en una subasta previa. En ella, se evidencian los incumplimientos incurridos por el recurrente durante la prestación de los mismos servicios que pretende que se le adjudiquen nuevamente, mediante la subasta que nos ocupa. Colegimos que esta documentación puso en posición a la Junta para denegarle la adjudicación de buena pro a Super Asphalt. De las comunicaciones que adjuntó la Directora en su *"Recomendación"*, surgen los siguientes incumplimientos por parte de la recurrente:

1. El 21 de octubre de 2022, la Directora envió una carta a Super Asphalt en la que reclamó un viaje imprevisto que se vio obligado a hacer el Departamento hacia el municipio de Peñuelas, para buscar primer asfáltico. Surge de la misma que al llegar, solo se pudo cargar 200 galones del material, ya que la recurrente no contaba con más. Según la misiva, este incumplimiento afecto unos trabajos de tiros de hormigón pautados en áreas residenciales y rurales.[8]

2. El 8 de noviembre de 2022, la Directora envió una carta a Super Asphalt indicando que el primer asfáltico entregado al Departamento no servía, por encontrarse en estado líquido.

---

[8] Apéndice del *"Alegato en Oposición de la Junta de Subastas del Municipio Autónomo de Guaynabo"*, pág. 19-20.

Según la misiva, no se pudieron hacer los trabajos de asfalto pautados en el Mirador Gavillán de Guaynabo.[9]

3. El 18 de noviembre de 2022, la Sra. Virgen Vélez Collazo, Administradora del Departamento, envió un correo electrónico a Super Asphalt en el que indicó que para ese día se había coordinado un tiro de hormigón en la Carretera 173, el cual requirió la coordinación de personal del Departamento y la Policía. Según la misiva, Super Asphalt no llegó al área acordada, y se tuvo que cancelar el evento, dejando así la carretera sin asfaltar.[10]

4. El 9 de febrero de 2023, la Directora envió una carta a Super Asphalt relacionada a la situación con el primer asfáltico. En ella expone que la recurrente solo estaba proveyendo 300 galones, cuando la capacidad de sus camiones es de 1,300 y 700 galones. Según la misiva, el poco material que recibían no era suficiente para completar los trabajos programados diariamente.[11]

5. El 10 de febrero de 2023, el Departamento envió un correo electrónico a la recurrente solicitando coordinación para buscar primer asfáltico. Sin embargo, no recibió respuesta. El 13 de febrero de 2023, tuvo que comunicarse nuevamente para dar seguimiento. [12]

6. El 28 de marzo de 2023, la Directora envió un correo electrónico a la recurrente solicitando coordinación para trabajos de repavimentación en la Carretera 169. Sin embargo, no recibió respuesta. El 28 de marzo de 2023, tuvo que comunicarse nuevamente para dar seguimiento.[13]

7. El 25 de abril de 2023, la Directora envió una carta a Super Asphalt en la que hizo varios señalamientos de incumplimiento con la Ley de Seguridad y Salud en el Trabajo, Ley Núm. 16 del 5 de agosto de 1975. Expuso que los proyectos de la recurrente no contaban con abanderados, lo que generaba un riesgo a los ciudadanos y empleados. Además, indicó que en dichos proyectos no se estaban usando chalecos reflectores. Advirtió que estos incumplimientos podrían resultar en multas.[14]

8. El 5 de junio de 2023, el Departamento envió un correo electrónico a la recurrente, en la que nuevamente le solicitó el primer asfáltico. Sin embargo, no recibió respuesta, y el 9 de junio de 2023 tuvo que comunicarse nuevamente para dar seguimiento.[15]

---

[9] Id. pág. 21.
[10] Id. pág. 31.
[11] Id. pág. 24.
[12] Id. págs. 22-23.
[13] Id. pág. 34.
[14] Id. pág. 38.
[15] Id. pág. 28-29.

Por consiguiente, razonamos que Super Asphalt no cumple con los requisitos del licitador responsable establecidos en el Código Municipal y el Reglamento Municipal. Además, justipreciamos que la documentación sometida por la recurrida merece entero crédito, por ser producto de conocimiento personal. En consecuencia, la *"Recomendación"* hecha por la Directora fue suficiente para justificar la decisión de la Junta.

Por otro lado, al amparo de un minucioso estudio del expediente que obra en autos, es forzoso concluir que los últimos dos (2) criterios de incumplimiento no se configuraron en ninguna etapa del procedimiento. No estamos de acuerdo con la apreciación del recurrente con relación a que, al haber considerado la *"Recomendación"* de la Directora para su determinación, la Junta denotó perjuicio y parcialidad. Surge del referido expediente que la recurrida obró conforme a derecho durante los trámites que culminaron en la adjudicación de la subasta que nos ocupa.

Conforme esbozamos en nuestra previa exposición doctrinal, la Junta está facultada para recibir recomendaciones de tres personas, a saber, funcionarios públicos, del municipio y de profesionales con experiencia en asuntos municipales. La Junta recibió una recomendación para la adjudicación de la subasta número 24-F-010A de una funcionaria municipal, la Directora. Según la sección 3.007 del Reglamento de Guaynabo, *supra,* la Junta podía recibir asesoramiento por funcionarios como la Directora, para adjudicar subastas municipales. La Directora encabeza la institución municipal que tiene conocimiento personal de las labores y los incumplimientos incurridos por el recurrente. La recomendación de la Directora no solo procedía como cuestión procesal bajo el Reglamento de Guaynabo, sino que merecía la credibilidad que se le adjudicó.

Finalmente, nos dirigimos al planteamiento del recurrente en cuanto al debido proceso de ley. Es norma reiterada que uno de los requisitos para el cumplimiento del debido proceso de ley es que la decisión administrativa esté basada en el expediente. *Graciani Rodriguez v. Garage Isla Verde LLC,* 202 DPR 117, 127 (2019); *González Segarra v. CFSE,* 188 DPR 252, 277 (2013); *Otero v. Toyota,* 163 DPR 716, 728 (2005). La Junta contaba con prueba suficiente en el expediente para adjudicar la subasta a PR Asphalt, quien no era el postor menor, pero sí la segunda oferta más baja.

Es meritorio señalar que a pesar a que el recurrente alega una violación al debido proceso de ley, por no haber tenido la oportunidad de refutar las alegaciones de la "Recomendación" de la Directora, lo cierto es que nada planteó en su recurso para impugnar las mismas. El recurrente se limitó a decir que la Junta actuó *ultravires* al adjudicar la subasta en cuestión, y no negó las imputaciones de esta, ni presentó ante este Tribunal prueba en contrario.

La documentación y la *"Recomendación"* de la Directora fue evidencia adecuada para negarle la subasta a la recurrente. Colegimos que la Junta no incurrió en perjuicio ni parcialidad al adjudicar la subasta número 24-F-010A, y actuó de manera razonable y dentro de sus facultades en derecho. En virtud de lo anterior *confirmamos la adjudicación de la Subasta Núm. 24-F-010A.*

**IV.**

Por los fundamentos antes expuestos, *se confirma la resolución recurrida.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones