Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| PERFECT INTEGRATED SOLUTIONS, INC.<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN; MUNICIPIO AUTÓNOMO DE SAN JUAN<br><br>Recurridos<br><br>ALL GREEN CLEANING & MAINTENANCE, LLC<br><br>Proponente Seleccionado<br><br>MASTER ROOFING, INC.; REYES CONTRACTOR GROUP, INC.<br><br>Otros Proponentes | KLRA202300637 | Revisión procedente de la Junta de Subastas del Municipio Autónomo de San Juan<br><br>Subasta núm.: 2024-010<br><br>Sobre: Impugnación de Adjudicación de Subasta |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de enero de 2024.

Al adjudicar una subasta, el Municipio de San Juan (el "Municipio") no consideró la propuesta más económica que recibió. Según se explica en detalle a continuación, concluimos que es irrazonable y arbitrario lo actuado por el Municipio porque, de la propuesta en cuestión, surge claramente, y sin margen de duda alguno, la cantidad ofrecida por la parte recurrente.

I.

En agosto de 2023, la Junta de Subastas del Municipio (la "Junta") publicó un *Aviso de Subasta* que incluyó, entre otras, la Subasta Núm. 2024-010 para la **impermeabilización de techos** en el Centro de Diagnóstico y Tratamiento Dr. José López Antongiorgi,

ubicado en el área de Puerto Nuevo del Municipio (la "Subasta"). Subsecuentemente, la Junta hizo disponible el pliego de la Subasta, lo cual incluyó las instrucciones a los licitadores, formularios que debían completar, las especificaciones técnicas del proyecto y las certificaciones que debían presentar. La Junta luego notificó varios apéndices (*addendums*) para informar modificaciones, aclarar detalles y contestar preguntas de los licitadores.

El 26 de septiembre, la Junta celebró el acto de apertura de la Subasta con la participación de Perfect Integrated Solutions, Inc. (la "Recurrente"), Master Roofing, Inc. ("Master"), All Green Cleaning & Maintenance, LLC ("All Green" o la "Licitadora Agraciada"), y Reyes Contractor Group, Inc. ("Reyes").

El 29 de noviembre, la Junta emitió una *Notificación de Acuerdo o Determinación Final* (la "Decisión") mediante la cual adjudicó la buena pro de la Subasta a All Green, cuya propuesta ascendió a **$552,393.60**. En cuanto a la Recurrente, cuya propuesta ascendía a **$461,135.85**, la Junta anunció que no había "proced[ido] con la segunda parte de la evaluación, ni [con] el análisis de costo" de la Recurrente porque dicha parte había "incumpl[ido] con los requisitos mínimos de eligibilidad" por haber "presenta[do] una cantidad en la tabla superior, *Bid Proposal*, Sección 1.2, que no concuerda con la cantidad total, "fix lump sum" de la Sección 1.1.1." En cuanto a la Licitadora Agraciada, el Municipio reconoció que esta **no** tenía experiencia en "trabajos de sellado de techo" y que sería la "primera vez [que] ofrec[ería] este servicio".

Inconforme, el 11 de diciembre (lunes), la Recurrente presentó el recurso que nos ocupa; planteó que la Junta cometió el siguiente error:

> Erró la Junta al excluir a Perfect Integrated Solutions Inc. de la buena pro de esta subasta cuando este fue el licitador de menor costo, el licitador de más experiencia

que cumplió con todos los requisitos cuando su propuesta es la que beneficia el interés público.

A finales de diciembre, el Municipio presentó su alegato. Arguyó que la Recurrente no había incluido en su propuesta un "precio exacto, ni completo ni determinado". Sostuvo que la cuantía incluida por la Recurrente en la Sección 1.1.1. de su propuesta ($461,135.85) era "inconsistente respecto a lo informado y desglosado en otras partes de su oferta". En cuanto a la falta de experiencia de la Licitadora Agraciada en proveer los servicios objeto de la Subasta, el Municipio planteó que dicha parte había "acompañ[ado] una carta" de una tercera compañía en la que se había "certifica[do]" que esta última era "un instalador autorizado". Resolvemos[1].

## II.

La subasta es uno de los vehículos procesales que tanto el gobierno central como los municipios utilizan para la adquisición de bienes y servicios. *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525, 531 (2019). El propósito primordial es proteger el erario fomentando la libre y diáfana competencia entre el mayor número de licitadores posibles. Con ello, se pretende maximizar la posibilidad de obtener el mejor contrato, mientras se protegen los intereses y activos públicos. La idea es que este mecanismo aumenta la probabilidad de que se obtengan "los precios más económicos" y de que se eviten "el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido". *PR Eco Park et al., supra.*

Las subastas que celebran los municipios están reglamentadas por la Ley 107-2020 ("Ley 107") y por el Reglamento

---

[1] La Recurrente luego solicitó presentar una réplica al alegato del Municipio, a lo cual el Municipio se opuso; luego, la Recurrente presentó lo que sería su réplica y el Municipio solicitó su desglose. No es necesario adjudicar lo relacionado con la pretendida réplica, pues hemos determinado, exclusivamente sobre la base del recurso y el alegato en oposición, que procede la revocación de la determinación recurrida.

para la Administración Municipal Núm. 8873 de la Oficina del Comisionado de Asuntos Municipales de 19 de diciembre de 2016 (el "Reglamento")[2]. *PR Eco Park et al., supra.* De igual modo, las agencias gubernamentales también tienen la facultad de aprobar un reglamento para establecer el procedimiento y las guías que han de seguir en sus propias subastas. *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 346 (2016). A tales efectos, el 9 de marzo de 2011, el Municipio promulgó el Reglamento de Subastas y Solicitud de Propuestas del Municipio Autónomo de San Juan que fue compilado en el Capítulo XXII del Código Administrativo del Municipio de San Juan de junio de 2019.

La Ley 107 establece los procedimientos a seguir para la celebración y adjudicación de subastas municipales. Respecto a la adjudicación de la subasta, el referido estatuto establece que, "[c]uando se trate de compras, construcción o suministros de servicios, la Junta **adjudicará a favor del postor razonable más bajo**". Art. 2.040 de la Ley 107. La citada ley añade que:

> La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.
>
> **La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público.** En este caso, **la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación**. (Énfasis suplido). Art. 2.040 (a) de la Ley 107-2020.

El municipio podrá rechazar una licitación cuando considere que el licitador carece de responsabilidad; este tenga una deuda con

---

[2] La Ley 81-2017 eliminó la Oficina del Comisionado de Asuntos Municipales (OCAM) y transfirió algunas de sus funciones a la Oficina de Gerencia y Presupuesto. No obstante, los reglamentos, memorandos circulares, circulares informativas y otros documentos emitidos por la OCAM, y que reglamentan los procedimientos administrativos y fiscales de los municipios, se mantienen en vigor en lo que no sean contrarios a las disposiciones de la Ley 81-2017.

el municipio o el gobierno central o federal; se determine que la naturaleza o calidad de los suministros, materiales o equipo no se ajustan a los requisitos indicados en el pliego de la subasta; los precios cotizados se consideren como irrazonables; o cuando el interés público se beneficie con ello. Art. 2.040 (b) de la Ley 107.

Al respecto, el Reglamento establece que la adjudicación de la subasta se hará a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento y que reúna los siguientes requisitos:

a. Que cumpla con los requisitos y condiciones de los pliegos de especificaciones;

b. **Que sea la más baja en precio** o que, aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.

**De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación. Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoría futura.** (Énfasis suplido). Cap. VIII, Parte II, Sec. 11 del Reglamento.

El Reglamento también detalla el procedimiento a seguir al adjudicarse la buena pro. Sobre ello, establece que la Junta tendrá que determinar las ofertas susceptibles de ser consideradas para la adjudicación. Cap. VIII, Parte II, Sec. 10 del Reglamento. Establece, además, que, "[l]uego de hacer esa determinación preliminar, la Junta procederá a verificar en las ofertas susceptibles de ser evaluadas, cuáles han cumplido con las especificaciones y condiciones solicitadas en la subasta". *Íd.* Realizado lo anterior, **"la Junta evaluará en primer lugar, aquella [oferta] cuyo precio sea el más bajo".** *Íd.* (Énfasis suplido).

Por otro lado, el derecho de revisión judicial que poseen los licitadores o participantes de estos procesos se encuentra de igual manera reglamentado por dichos cuerpos normativos. En

particular, la Ley 107 establece el derecho de revisión judicial de los licitadores o participantes de estos procesos. Véase Art. 1.050 de la Ley 107-2020; *Puerto Rico Eco Park, Inc.*, 202 DPR a las págs. 533-534. Al respecto, se dispone que este Tribunal "revisará, el acuerdo final o adjudicación de la Junta de Subastas" y que el recurso deberá presentarse "dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la copia de la notificación del acuerdo final o adjudicación". Art. 1.050 de la Ley 107.

Con relación al contenido de la notificación de la adjudicación de la subasta, el Artículo 1.050 de la Ley 107 dispone que la notificación deberá incluir: (1) el derecho de la(s) parte(s) afectada(s) de acudir ante el Tribunal de Apelaciones para la revisión judicial; (2) término para apelar la decisión; (3) la fecha de archivo en auto de la copia de la notificación; y, (4) a partir de qué fecha comenzará a transcurrir el término para recurrir en revisión. Además, la "Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta". Art. 2.040 de la Ley 107.

III.

Concluimos que el Municipio, de forma arbitraria e irrazonable, descartó considerar la propuesta de la Recurrente, la cual era aproximadamente 20% más económica que la sometida por la Licitadora Agraciada. El error del Municipio se agrava al considerar que la Licitadora Agraciada no tiene experiencia alguna en proveer los servicios objeto de la Subasta.

Contrario al "razonamiento" del Municipio, la propuesta de la Recurrente no permite duda alguna con respecto a la cuantía licitada: $461,135.85. Esto surge en blanco y negro de la Sección 1.1.1. de su propuesta. Contrario a la teoría del Municipio, esta cantidad corresponde de forma exacta y perfecta con el desglose de costos sometido por la Recurrente en la Sección 1.2 de la

propuesta.  Allí se incluyen dos tablas, la primera con tres cuantías y un sub-total, y la segunda con cinco cuantías y otro sub-total.  Al sumar las ocho cuantías (o, lo mismo, al sumar los dos sub-totales), se obtiene, precisamente, la cuantía global consignada en la Sección 1.1.1. ($461,135.85).

Así pues, contrario a lo inexplicablemente planteado por el Municipio, la Recurrente sí ofreció un precio "exacto", "completo" y "determinado".   Nada en el récord ni remotamente apoya la conclusión en contrario del Municipio.  Según arriba expuesto, el precio consignado por la Recurrente en la Sección 1.1.1 de su propuesta corresponde de forma exacta con la suma de las partidas desglosadas en la Sección 1.2 de la Propuesta.

Lo anterior, por sí solo, es suficiente para revocar la Decisión.  Pero hay más: fue la Licitadora Agraciada quien no cumplió con al menos dos de los requisitos establecidos por el propio Municipio.  Primero, del récord surge de forma incontrovertida que la Licitadora Agraciada no posee experiencia alguna en trabajos de impermeabilización de techos.  Sin embargo, en las Instrucciones a los Licitadores, el Municipio informó que todos los licitadores debían, por lo menos, haber realizado dos (2) proyectos de tipo, complejidad y alcance similar al de la Subasta.  Segundo, la Licitadora Agraciada no firmó a manuscrito su propuesta, contrario a lo que requiere el Artículo 22.47.10 del Capítulo V del Código Administrativo del Municipio de San Juan.

A pesar de dichos incumplimientos, el Municipio, en cuanto a la Licitadora Agraciada, determinó que sería flexible; por ejemplo, en cuanto a la firma, la Junta consignó que se trataba de "una desviación menor [que] no amerita descalificación".  Ello en marcado contraste con su arbitraria determinación de descalificar a la Recurrente por supuestamente no haber dejado suficientemente claro cuál era el costo de su propuesta.

En fin, el récord no contiene evidencia alguna que sustente la Decisión y, al no haberse planteado por el Municipio razón alguna para apartarse de la norma general en cuanto a favorecer al licitador más económico, procedía la adjudicación de la buena pro de la Subasta a la Recurrente.

IV.

Por los fundamentos expuestos, se revoca la decisión recurrida y se ordena la adjudicación de la Subasta 2024-10 a la parte recurrente, Perfect Integrated Solutions, Inc., quien sometió la propuesta más económica.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Pagán Ocasio está conforme con la determinación de dejar sin efecto la adjudicación de la subasta. No obstante, disiente de la determinación de adjudicar la subasta a la parte recurrente, basado únicamente en que sometió la propuesta más económica. Adviértase que, a tenor con la ley, su jurisprudencia interpretativa y la reglamentación aplicable el criterio económico no es el único criterio a evaluar al momento de adjudicar una subasta para bienes y servicios públicos municipales. En su lugar, entiendo que procede ordenar a la Junta de Subastas del Municipio de San Juan que lleve a cabo nuevamente la subasta, conforme a las normas de deferencia al ente adjudicador municipal y la discreción que tiene para adjudicar las subastas a favor de la licitación que estime que se ajusta mejor a las necesidades particulares del municipio y al interés público en general.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones