Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **CARDINAL HEALTH P.R. 220, LLC**<br><br>Recurrente<br><br><br>v.<br><br><br>**JUNTA DE SUBASTAS DE LA ADMINISTRACION DE SERVICIOS MÉDICOS DE PUERTO RICO**<br><br>Recurridos | KLRA202400538 | **REVISIÓN ADMINISTRATIVA**<br>Procedente de la Administración de Servicios Generales Junta Revisora de Subastas<br><br>Núm. de Caso:<br>**JR-24-134**<br><br>Subasta Núm.:<br>**BD4-01170**<br><br>Sobre: **"Adquisición de Analizador de Cultivos de Sangre de la ASEM"** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 20 de noviembre de 2024.

Comparece ante nos, Cardinal Health P.R. 220, LLC, en adelante, Cardinal o recurrente, solicitando que revisemos la adjudicación de subasta por la Junta de Subastas de la Administración de Servicios Médicos de Puerto Rico, en adelante, Junta de Subastas o recurrida, del 3 de julio de 2024. En la misma, la recurrida rechazó una oferta de la recurrente, representativa del menor postor.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen recurrido.

## I.

El 30 de enero de 2023 la Administración de Servicios Médicos de Puerto Rico, en adelante, ASEM, extendió una invitación para la Subasta Formal Número BD4-01170, para la Adquisición de

Analizador de Cultivos de Sangre de la ASEM.[1] El *"Pliego de Subasta Formal Número BD4-01170"*, en adelante, Pliego, estableció unos requisitos especiales para los licitadores.[2] Entre estos, los interesados debían exponer la siguiente información sobre su propuesta:

1. Que los analizadores manejaran eficientemente los cultivos de sangre pediátricas;
2. Servicio a todas horas del día, todos los días del año, con tiempo de espera telefónica de no más de una (1) hora, y no más de dos (2) horas para recibir respuesta del personal técnico;
3. Especificar los mantenimientos diarios, semanales, mensuales y anuales de la compañía licitadora y el operador;
4. El tiempo requerido de mantenimiento no debe exceder de quince (15) minutos;
5. Servicios preventivos y de mantenimiento, indicando la frecuencia y el tiempo requerido para ello;
6. Personal técnico adiestrado en Puerto Rico que brinde servicio en un tiempo no mayor de tres (3) horas;
7. La capacidad del analizador para medir el volumen de las botellas de cultivo de sangre, conforme al estándar indicado.

La División de Compras de la Junta de Subastas recibió ofertas de dos (2) licitadores.[3] Isla Lab Products, LLC, en adelante, Isla Lab, licitó en la subasta en cuestión por un monto total de $1,926,450.96. Por su parte, Cardinal ofertó en la misma, por la cantidad de $1,540,000.00. El 3 de julio de 2024, la Junta de Subastas emitió un aviso mediante el cual adjudicó la subasta que nos ocupa a Isla Lab.[4]

La recurrida explicó que rechazó la oferta de Cardinal, haciendo los siguientes señalamientos:[5]

1. Requiere mantenimiento diario y mensual;
2. No cuentan con personal adiestrado que ofrezca apoyo técnico;
3. No tiene especialistas en aplicaciones en Puerto Rico;

---

[1] Apéndice del recurso, pág. 51.
[2] *Id.*, pág. 69.
[3] *Id.*, pág. 46.
[4] *Id.*, pág. 32.
[5] *Id.*, pág. 34.

4. Se utiliza un sistema de algoritmos para calcular volumen;

5. Requiere botellas distintas para líquidos estériles;

6. Carece de eficiencia operativa;

7. Carece de innovación y automatización.

Así las cosas, Cardinal presentó una *"Solicitud de Revisión Administrativa e Impugnación de Adjudicación de Subasta"* ante la Junta Revisora de Subastas, en adelante, Junta Revisora, el 17 de julio de 2024.[6] En la misma, rebatió los criterios para el rechazo de su oferta por la Junta de Subastas, y catalogó como arbitraria su decisión. Sin embargo, el 9 de septiembre de 2024, la Junta Revisora emitió una *"Resolución"*, en la cual confirmó la adjudicación de subasta de la recurrida.[7]

Inconforme, Cardinal recurre ante esta Curia, mediante un *"Escrito de Revisión de Decisión Administrativa"*. En su recurso, hace el siguiente planteamiento de error:

> ERRÓ LA JUNTA AL NO OTORGARLE A CARDINAL HEALTH P.R. 220, LLC., LICITADOR CON VASTA EXPERIENCIA EN EL MERCADO, LA BUENA PRO DE LA SUBASTA CON UNA OFERTA CUYO COSTO ES DE $386,450.96 MENOR QUE LA DEL LICITADOR AGRACIADO Y LA CUAL REPRESENTA EL MEJOR VALOR E INTERÉS PÚBLICO.

Mediante *"Resolución"* del 3 de octubre de 2024, le concedimos a la parte recurrida hasta el 30 de octubre de 2024 para que presentara su posición en cuanto al recurso, conforme a la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 63. En cumplimiento de orden, la Junta de Subastas radicó su *"Alegato en Oposición a Recurso de Revisión de Decisión Administrativa"*, el 28 de octubre de 2024.

Perfeccionado el recurso ante nos, estamos en posición de resolver.

---

[6] Apéndice del recurso, pág. 37.
[7] *Id.*, pág. 23.

**II.**

**A. Revisión judicial de subastas**

La revisión de las subastas gubernamentales se rige por principios similares a los que gobiernan la revisión de los procedimientos celebrados ante las agencias administrativas. *St. James Sec. v. AEE,* 2023 TSPR 149, 213 DPR ___ (2023); *Maranello et al. v. O.A.T.,* 186 DPR 180, 793 (2012). Cónsono con ello, el Tribunal Supremo ha expresado que las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración de acuerdo con los parámetros establecidos por la ley y los reglamentos aplicables. *Aut. Carreteras v. CD Builders, Inc.,* 177 DPR 398, 408 (2009); *Caribbean Communications v. Pol. de P.R.,* 176 DPR 978, 1006 (2009). Ello responde a que la agencia posee una vasta experiencia y especialización que la coloca en mejor posición que el foro judicial para seleccionar el postor que más convenga al interés público. *Transporte Sonell, LLC v. Junta Subastas Aut. Carreteras,* 2024 TSPR 82, 214 DPR ___ (2024); *Maranello et al. v. O.A.T.,* supra, pág. 792.

Dado que la adjudicación de las subastas gubernamentales conlleva el desembolso de fondos del erario, dichos procedimientos están revestidos de un gran interés público, "pues busca promover la inversión adecuada, responsable y eficiente de los recursos del Estado". *Transporte Sonell, LLC v. Junta Subastas Aut. Carreteras,* supra; *Super Asphalt v. AFI,* 206 DPR 803, 820 (2021); *Caribbean Communications v. Pol. de P.R.,* supra; *Costa Azul v. Comisión,* 170 DPR 847 (2007); *A.E.E. v. Maxon,* 163 DPR 434, 438-39 (2004). Por ello, nuestro Máximo Foro ha expresado que "la consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del pueblo de Puerto Rico". *Caribbean*

*Communications v. Pol. de P.R.*, supra; *Cordero Vélez v. Mun. de Guánica*, 170 DPR 237, 245 (2007). El objetivo fundamental de las subastas gubernamentales es proteger al erario mediante la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno y al mejor precio posible. *Super Asphalt v. AFI*, supra, pág. 821. Del mismo modo, procura establecer un esquema que asegure la competencia equitativa y transparente entre los licitadores, evite la corrupción, el favoritismo, y minimice los riesgos de incumplimiento. *Mun. Aguada v. W. Construction, LLC*, 2024 TSPR 69, 213 DPR ___ (2024); *Transporte Sonell, LLC v. Junta Subastas Aut. Carreteras*, supra; *ECA Gen. Contract v. Mun. Mayagüez*, 200 DPR 665, 672 (2018).

Resulta importante apuntalar que las agencias gozan de amplia discreción en la evaluación de las distintas propuestas sometidas en la licitación de bienes y servicios, y adjudicar las mismas a favor del licitador que se ajusta mejor a las necesidades particulares, tanto de la agencia como del interés público en general. *St. James Sec. v. AEE*, supra; *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 349 (2016). Así, se ha admitido que la selección de un proveedor sobre otros puede "conllevar decisiones que descansen, ***no en criterios estrictamente matemáticos***, sino en una valoración de la tecnología, los recursos humanos con que cuenta el proveedor, a la luz de las necesidades presentes y futuras de la agencia". *A.E.E. v. Maxon*, 163 DPR 434, 439 (2004). (Énfasis suplido). Bien lo ha dicho nuestro Tribunal Supremo, cuando estableció que "el hecho de que un licitador haga la propuesta más baja, no obliga al organismo público a adjudicar la subasta a dicho licitador". *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 786 (2006). Esto, ya que se tienen que considerar otras variantes, como el interés público, y "la necesidad de obras bien realizadas, que garanticen ganancias y no pérdidas". *Id.* Además, ha sido

contundente en que "ningún postor tiene un derecho adquirido" al participar de una subasta. *Id.*

Ahora bien, una vez es adjudicada la *buena pro*, los tribunales no deben sustituir el criterio de la agencia o junta concernida, excepto si se demuestra que la decisión se tomó de forma arbitraria o caprichosa, o mediando fraude o mala fe. *Transporte Sonell, LLC v. Junta Subastas Aut. Carreteras*, supra; *CD Builders v. Mun. Las Piedras*, supra, pág. 349; *Caribbean Communications v. Pol. de P.R.*, supra, pág. 1006. En ausencia de estos elementos, "ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La cuestión debe decidirse a la luz del interés público." *Great American Indemnity Co. v. Gobierno de la Capital*, 59 DPR 911, 916 (1942), citado en *Maranello et al. v. O.A.T.*, supra, pág. 793. Véase, además, *Transporte Sonell, LLC v. Junta Subastas Aut. Carreteras*, supra; *St. James Sec. v. AEE*, supra. En estos casos, la determinación de la agencia será sostenida si cumple con el criterio de razonabilidad. *Maranello et al. v. O.A.T.*, supra. Es decir, el tribunal debe dirimir si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituya un abuso de discreción. *St. James Sec. v. AEE*, supra; *Super Asphalt v. AFI*, supra, pág. 820.

Como es sabido, las determinaciones de agencias administrativas gozan de una presunción de corrección. *Transporte Sonell, LLC v. Junta Subastas Aut. Carreteras*, supra; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 114 (2023); *EG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Super Asphalt v. AFI y otro*, supra, pág. 819; *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010). Por todo lo cual, la parte que impugne la adjudicación de una subasta debe demostrar "que se tomó de forma arbitraria, caprichosa o

mediando fraude o mala fe". *Transporte Sonell, LLC v. Junta Subastas Aut. Carreteras*, supra; *Caribbean Communications v. Pol. de P.R.,* supra, pág. 1006; *Empresas Toledo v. Junta de Subastas*, supra, pág. 783.

Finalmente, cuando una parte se propone retar las determinaciones de una agencia, nuestro ordenamiento jurídico requiere que este debe demostrar que las mismas no están correctamente fundamentadas. Es por esto, que, deberá ofrecerle al foro revisor prueba que aminore o menoscabe la evidencia que obre en el expediente administrativo. *Otero Mercado v. Toyota de Puerto Rico*, 163 DPR 716, 728 (2005).

### A. Subastas de la ASEM

En nuestro ordenamiento jurídico no existe un estatuto uniforme que regule los procedimientos de subastas gubernamentales para la adquisición de bienes y servicios. Por tanto, corresponde a cada agencia ejercer su poder de reglamentación, siempre que el estatuto habilitador le delegue dicha facultad, para establecer las normas que habrán de regir sus procedimientos de subastas. *Super Asphalt v. AFI,* supra, pág. 821; *ECA Gen. Contract v. Mun. Mayagüez,* supra, pág. 673.[8]

Así, el 22 de febrero de 1996, se promulgó el Reglamento para la Junta de Subastas de la Administración de Servicios Médicos de Puerto Rico, Reglamento Número 5385, en adelante, Reglamento. Destacamos que en la Sección 9 (h) del Reglamento establece que, al considerar las cotizaciones, la Junta de Subastas deberá considerar, "además del precio del artículo o servicio", factores como

---

[8] De ordinario, el procedimiento de subasta pública formal consta de varias etapas, a decir: (1) la preparación de los pliegos de condiciones; (2) la publicación del aviso de subasta; (3) el recibo de las propuestas selladas y su posterior apertura pública; (4) la evaluación y el estudio de las propuestas por el comité evaluador de la agencia; (5) la recomendación del comité respecto a la adjudicación de la *buena pro*; (6) la adjudicación de la subasta, y (7) la notificación a los licitadores. *Mun. Aguada v. W. Construction, LLC,* supra; *Super Asphalt v. AFI,* supra, pág. 821.

la calidad, habilidad y experiencia del licitador, entre otros. Por otro lado, la Sección 9 (k) del Reglamento dispone que, si la subasta se adjudica a un licitador que no sea el más bajo en oferta, la Junta de Subastas **deberá explicar detalladamente por qué rechazó la del menor postor.**

Por su parte, y relevante al caso de marras, el Reglamento dispone en su Sección 10 (m) que, "[u]na vez abiertas las proposiciones recibidas, **no se aceptará información adicional de los postores**, a menos que la Junta de Subastas lo solicite por escrito". (Énfasis suplido). Es decir, la Junta de Subastas no está obligada a recibir información adicional a las propuestas, posterior al momento de que las mismas sean abiertas, y más aún, después que sean consideradas y adjudicadas.

### III.

Cardinal solicita que revoquemos la determinación de la Junta de Subastas, y lo declaremos el licitador agraciado de ASEM. El recurrente nos plantea que la recurrida fue arbitraria, al concederle a Isla Lab la *buena pro* de la subasta en cuestión. Esto, ya que su propuesta era significativamente más económica. Arguye, además, que la Junta de Subastas, con su proceder, actuó contrario al interés público. *No le asiste razón.*

Como esbozáramos previamente, la adjudicación de la subasta impugnada goza de una presunción de corrección, por ser la ASEM la agencia con el conocimiento especializado. Además, nuestra Máxima Autoridad Judicial ha establecido inequívocamente y en múltiples ocasiones, que la cantidad de dinero ofertada no es el único ni el más importante criterio para evaluar una oferta de subasta. Más aún, ha establecido que un licitador no adquiere un derecho por ofertar, ni está facultado a impugnar la determinación final de una agencia, basado únicamente en el criterio económico.

Por ello, este Tribunal viene obligado a intervenir con sus determinaciones, solo cuando haya mediado arbitrariedad, mala fe o fraude. Para ello, la parte que impugne, en este caso una subasta, adjudicada por una agencia, deberá ofrecer prueba que establezca que la agencia no tomó una decisión sustentada en el expediente administrativo. Entendemos que Cardinal no cumplió con ello. Veamos.

En su pliego, ASEM plasmó una serie de requisitos para la concesión de la subasta para *el analizador de cultivos de sangre.* Surge de la propuesta de Cardinal, que no se incluyó el tiempo de respuesta para el servicio técnico, que en el pliego indicaba no podía exceder de quince (15) minutos. La propuesta tampoco incluyó la cantidad del personal técnico que ASEM requirió estuviese localizado en Puerto Rico. La adjudicación hace otra serie de señalamientos para su rechazo. Por otro lado, Cardinal plantea que nada en el pliego hablaba de automatización, por lo que la Junta de Subastas no podía considerar ese requisito para rechazar su oferta.

Conforme a lo exigido en el Reglamento, la Junta de Subastas explicó de manera detallada – haciendo alusión al pliego y a la oferta de la recurrente – cuáles fueron las deficiencias de esta última, que resultaron en el rechazo de su propuesta. Si bien es cierto que la automatización no era un criterio del pliego de subasta, no por ello podemos obviar que la licitación de Cardinal, en efecto, no cumplió con varios requisitos que sí estaban contemplados. Además, la información provista por la recurrente, para refutar los señalamientos de deficiencia por la recurrida, fueron ofrecidos posterior a la apertura, consideración y adjudicación de la subasta. Según reseñamos en el epíteto previo, el Reglamento impide que la Junta de Subastas considere información adicional a la provista por la oferta en etapas de revisión administrativa.

Puntualizamos que Cardinal no adquirió un derecho por haber sido el menor postor. Por todo lo cual, justipreciamos que la Junta de Subastas no se equivocó al conceder la subasta al mayor postor, ya que justificó conforme a derecho y basado en el expediente, su decisión. No habiendo mediado fraude, mala fe o arbitrariedad, procede que otorguemos a la recurrida deferencia en su determinación.

**IV.**

Por los fundamentos que anteceden, *confirmamos el dictamen recurrido.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones