| | | |
|---|---|---|
| DUNAMIS CONSTRUCTION, CORP.<br><br>Recurrente<br><br>v.<br><br>MUNICIPIO DE COROZAL; JUNTA DE SUBASTAS DEL MUNICIPIO DE COROZAL<br><br>Recurridos<br><br>ENVIRO-TAB, INC.<br>Licitador Agraciado | TA2025RA00212 | REVISIÓN JUDICIAL Procedente de la Junta de Subasta del Municipio de Corozal<br><br>Caso Núm.: 008-2025-2025<br><br>Sobre: Impugnación de Adjudicación y de Notificación de Adjudicación de Subasta Núm. 008-2025-2025, para las Mejoras a Facilidades del Polideportivo de Corozal |

Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL VIII

Panel integrado por su presidenta, la jueza Lebrón Nieves, el juez Pagán Ocasio y la jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 21 de noviembre de 2025.

Comparece ante nos Dunamis Construction, Corp. ("Recurrente" o "Dunamis") mediante *Recurso de Revisión* recibido el 2 de septiembre de 2025. Nos solicita la revisión de una determinación emitida por la Junta de Subastas del Municipio de Corozal ("la Junta") el 20 de agosto de 2025 y notificada el 23 de agosto de 2025. Por virtud del aludido dictamen, la Junta adjudicó la buena pro de la subasta 008-2024-2025[1], sobre mejoras a las facilidades del Polideportivo de Corozal, a Enviro-Tab, Inc. ("Enviro-Tab" o "licitador agraciado").

---

[1] Contrario al número de subasta consignado en el epígrafe, surge del expediente recibido por esta Curia que el número correcto de la subasta es el 008-2024-2025.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

**I.**

Conforme surge del expediente , el 30 de abril de 2025, la Junta publicó *Aviso de Subasta Núm. 008-2024-2025* para la contratación de servicios de construcción dirigidos a la revitalización de la ciudad, particularmente para realizar mejoras a las facilidades del Polideportivo del Municipio de Corozal.[2] En lo que concierne, el aviso incluía las fechas importantes del proceso de subasta. Entre ellas, señalaba que la reunión pre-subasta se llevaría a cabo el 16 de mayo de 2025, y las ofertas debían ser sometidas en o antes del 5 de junio de 2025. Cabe señalar que, el aviso indicaba que la asistencia a la reunión pre-subasta no era compulsoria, aunque sí recomendada.[3]

Así pues, el 16 de mayo de 2025, se celebró la reunión pre-subasta, cuyas incidencias quedaron recogidas en el Acta Núm. 033.[4] Según surge de esta, a la reunión comparecieron un total de nueve (9) licitadores, entre ellos, Dunamis. Durante la reunión, se explicaron los detalles del proyecto y los requisitos mandatorios para participar del proceso de subasta, así como el alcance de la oferta y la forma de ofertar. En ese contexto, y en lo pertinente, el Presidente de la Junta, señor Juan E. Díaz Rivera ("Presidente"), indicó lo siguiente:

> El presidente informa que este es un proyecto importante para el Municipio, esta instalación es legendaria en nuestro pueblo y queremos reabrir el espacio. El corazón de este proyecto es la piscina, y tiene sus detalles en lo que es el proyecto. Los planos y especificaciones explican que hay que realizar una prueba de presión a los *[sic]* que es la tubería existente para determinar si pasa o no la prueba. **A la hora de presentar la oferta tienen que presentar las dos opciones, una con la prueba de presión pasando y otra con la prueba de presión fallando, cual sería el plan y el**

---

[2] Véase, Sistema Uniforme de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA), Entrada 1, Apéndice 3, pág. 006.

[3] *Íd.*

[4] Véase, *Expediente de Subasta Núm. 008 2024-2025,* págs. 830-836.

**costo por los dos escenarios.** Es importante que tengamos los dos. (Énfasis nuestro).[5]

Posteriormente, el 2 de julio de 2025, la Junta llevó a cabo la apertura de las ofertas recibidas. Según se desprende del Acta Núm. 001[6], se detallaron y aceptaron tres (3) propuestas, presentadas individualmente por Enviro-Tab, Dunamis y Rebuilders PR, LLC. Conviene señalar que, luego de concluida la apertura, el representante de Enviro-Tab, el señor Edwin Peña, indicó que Dunamis y Rebuilders PR, LLC no presentaron ofertas para la alterna, según requerido. Ante ello, la Secretaria de la Junta hizo constar que "de un examen del Exhibit C "Cost Form" no se logra identificar. No obstante, las ofertas serán evaluadas al detalle para determinar si fueron incluidas en alguno de los documentos adicionales".[7]

Posteriormente, el 19 de agosto de 2025, la Junta realizó otra reunión para dar paso a la adjudicación de la subasta.[8] En ese contexto, se hizo constar que las propuestas recibidas fueron evaluadas por la firma *Applied Engineering Group, PSC.* Tras su análisis, la firma hizo varias recomendaciones, a saber: (1) solicitar aclaraciones o revisiones a los licitadores en las sumas totales de las cuantías declarados en los formularios de costos y las sumatorias reales de las partidas; (2) aclarar el manejo de alternas y, (3) evaluar posibles reducciones al alcance del diseño.

Ante ello, el Presidente de la Junta informó que se había realizado una consulta con el Departamento de la Vivienda de Puerto Rico, toda vez que los costos propuestos excedían el presupuesto estimado, y era dicha agencia quien manejaba los fondos disponibles para llevar a cabo el proyecto. De conformidad al Acta Núm. 006, la Junta realizó la siguiente consulta:

---

[5] *Íd.*, pág. 834.
[6] *Íd.*, págs. 1756-1758.
[7] *Íd.*, pág. 1757.
[8] *Íd.*, págs. 1760-1764.

[...]

Municipio de Corozal realizó una segunda subasta pública para la cual se recibieron tres ofertas. Nuevamente todas sobre el presupuesto estimado. Se realizó el análisis por parte del diseñador y todas cumplen con los requisitos de la subasta. Estamos en posición de retirar ítems para alcanzar el presupuesto y solicitamos que Vivienda nos autorice a continuar el proceso y nos indique la manera correcta para cumplir con el programa.[9]

Evaluada la consulta, el Departamento de Vivienda expuso que el Municipio de Corozal había informado "desde el inicio sobre la posibilidad de adjudicar la subasta por renglón y se explicó el proceso que se llevaría a cabo."[10] Así pues, consideró que adjudicar la subasta de conformidad "a los parámetros establecidos cumpliría con el procedimiento."[11] A tenor de dicha sugerencia, la Junta eliminó varias partidas y se concentró en la alterna para el Sistema Hidráulico de la Piscina.

Por otra parte, y en atención a las recomendaciones de la firma evaluadora, la Junta examinó lo correspondiente a la alterna y concluyó que Dunamis y Rebuilders PR, LLC "no cumplieron con el requisito de presentar una alterna y poner en posición al Municipio de conocer el costo adicional para realizar el nuevo sistema hidráulico de la piscina en el escenario del sistema existente no pasar la prueba de presión".[12] Detalló que ambas compañías presentaron el documento identificado como *Cost Form* con un "N/A".[13] A esos efectos, la Junta eliminó las partidas identificadas de la propuesta de Enviro-Tab, y razonó que, con la reducción, su oferta se mantenía dentro del presupuesto. Así pues, los miembros de la Junta acordaron adjudicar el proyecto.

Consecuentemente, el 20 de agosto de 2025, notificada el día 23 del mismo mes y año, la Junta emitió su determinación y

---

[9] *Íd.*, pág. 1762.
[10] *Íd.*
[11] *Íd.*, págs. 1762-1763.
[12] *Íd.*, pág. 1764.
[13] *Íd.*, pág. 1763.

adjudicó la buena pro a Enviro-Tab.[14] A través de la notificación correspondiente, la Junta hizo constar que su determinación estuvo basada en lo siguiente:

1. Requisito de Oferta y Alterna:

   a. Las Ofertas presentadas por las compañías Rebuilders PR, LLC y Dunamis Construction, Corp. no cumplen con las especificaciones y condiciones de la Subasta. Según establecido, en el Exhibit C "Cost Form" las compañías tenían que presentar costo por una alterna al proyecto para el Sistema Hidráulico de la Piscina, lo cual no fue presentado.

   b. Durante el proceso de Pre-Subasta la Junta fue enfática en que todos los documentos debían ser completados en su totalidad, Attachment y Exhibits, ya que el no completar alguno de los documentos sería causa para determinar que no se cumple con lo requerido.

   c. Así también se estableció en la Pre Subasta que era responsabilidad del Contratista revisar los Planos y Especificaciones al momento de presentar su oferta, las Hojas de detalles por Actividades y Partidas fue requerido para propósitos de evaluación de la Junta de Subastas.

   d. De igual forma se indicó que la Alterna respondía a la necesidad de realizar una prueba de presión al Sistema Hidráulico existente en la piscina, las compañías debían presentar la alterna para atender la eventualidad que la prueba de presión fallara y fuera necesario reemplazar el sistema existente, de esta forma la Junta estaría en posición de adjudicar el proyecto con ambos escenarios.

   e. La compañía Enviro-Tab, Inc. presentó su oferta y el costo por la alterna.

[…][15]

Inconforme con dicha determinación, Dunamis presentó el recurso de epígrafe el 2 de septiembre de 2025.[16] En su escrito esbozó los siguientes señalamientos de error:

> Erró el Municipio y su Junta de Subastas al adjudicar la Subasta Núm. 008-2025-2025 a un licitador distinto a Dunamis Construction, Corp., a pesar de que este último cumplió con todos los requisitos del pliego y presentó la propuesta económica más baja, sin exponer de forma clara y específica las razones de interés público que justificaran lo contrario, en contravención al Código Municipal, su reglamento y la normativa aplicable a la adjudicación de subastas públicas.[17]

---

[14] Véase, SUMAC-TA, Entrada 1, Apéndice 2.
[15] *Íd.*, pág. 2.
[16] Véase, SUMAC-TA Entrada 1.
[17] Reiteramos que el número correcto de la subasta es el 008-2024-2025.

> Erró la Junta de Subastas al emitir una notificación de adjudicación vaga, carente de fundamentos objetivos y sustentando su decisión en expresiones verbales alegadamente hechas durante la reunión de pre-subasta no-compulsoria, y no con base en las especificaciones de los pliegos, en violación a la jurisprudencia, el deber de notificación adecuada y los principios de competencia, transparencia y sana administración pública.

Ese mismo día, la Recurrente presentó *Urgente Moción en Solicitud de Orden en Auxilio de Jurisdicción y Certificación de Cumplimiento con la Regla 79 (E) del Reglamento [de] este Honorable Tribunal.* En ella, solicitó paralizar los efectos de la adjudicación de la subasta.[18] A esos efectos, el 3 de septiembre de 2025, emitimos *Resolución* en la que concedimos al Municipio de Corozal y a la Junta (en conjunto, "Parte Recurrida")hasta el 8 de septiembre de 2025 para presentar su posición en cuanto a la moción en auxilio de jurisdicción y hasta el 3 de octubre de 2025 para presentar su alegato en oposición.[19]

El 8 de septiembre de 2025, la Parte Recurrida" presentó *Moción Informativa en torno a Moción en Auxilio de Jurisdicción al Honorable Tribunal.*[20] En esta, informó  haber paralizado *motu proprio* todo trámite relacionado a la subasta en cuestión, hasta la adjudicación del caso.

Luego, el 2 de octubre de 2025, Enviro-Tab presentó *Alegato en Oposición a Solicitud de Revisión Judicial.*[21] En síntesis, indicó que no procedía la revocación de adjudicación de subasta solicitada por Dunamis. Además, señaló que la Recurrente incumplió con los requisitos mandatorios esenciales dispuestos en la subasta, al anotar "N/A" en el renglón denominado como "*Alternate* 1" en la forma *Exhibit [C] Cost Form* que formó parte del paquete de subasta. Aclarado este asunto, el licitador agraciado enfatizó que, a pesar de

---

[18] Véase, SUMAC-TA, Entrada 2.
[19] Véase, SUMAC-TA, Entrada 4.
[20] Véase, SUMAC-TA, Entrada 5.
[21] Véase, SUMAC-TA, Entrada 7.

la diferencia económica entre su oferta y la oferta propuesta por la Recurrente, la Junta no estaba obligada a decidirse por la de menor costo.

Por su parte, el 3 de octubre de 2025, la Parte Recurrida presentó *Alegato en Oposición a Recurso de Revisión.*[22] En este, solicitó la desestimación del recurso e indicó que la Recurrente no cumplió con los requisitos dispuestos en la subasta. A esos efectos, avaló la adjudicación realizada.

Posteriormente, el 7 de octubre de 2025, la Parte Recurrida instó *Moción Informativa sometiendo Apéndice 1 del Alegato Consignado en SUMAC 9.*[23] En el escrito, comunicó la entrega física y en formato digital del expediente de la Subasta Núm. 008-2024-2025.

Subsiguientemente, el 15 de octubre de 2025, Dunamis presentó *Moción a tenor con la Regla 59 (E) del Reglamento del Tribunal de Apelaciones de Puerto Rico y Solicitud de Orden de Desglose.*[24] En síntesis, indicó que las minutas preparadas durante el proceso de la subasta e incluidas en el expediente presentado por la Parte Recurrida no le fueron notificadas. Asimismo, indicó que la parte descrita en el proyecto como "Alterna" no se desprendía del expediente original de la subasta.

Al día siguiente, 16 de octubre de 2025, esta Curia emitió *Resolución* y concedió a la Parte Recurrida hasta el 21 de octubre de 2025, para expresarse en torno a la referida moción.[25]

En cumplimiento con lo ordenado, el 17 de octubre de 2025, la Parte Recurrida presentó *Moción informativa y Oposición a Solicitud de Orden de Desglose.*[26] En resumen, subrayó que

---

[22] Véase, SUMAC-TA, Entrada 9.
[23] Véase, SUMAC-TA, Entrada 11.
[24] Véase, SUMAC-TA, Entrada 13.
[25] Véase, SUMAC-TA, Entrada 14.
[26] Véase, SUMAC-TA, Entrada 15.

Dunamis tuvo acceso al expediente completo previo a la presentación del presente recurso.

Por no coincidir con lo expresado, el 21 de octubre de 2025, Dunamis presentó *Solicitud de Autorización para Replicar la Oposición,* en la que solicitó hasta el 28 de octubre de 2025 para replicar el escrito de los Recurridos.[27]

Considerados los planteamientos esbozados por las partes, el 24 de octubre de 2025, esta Curia emitió *Resolución* mediante la cual, declaró *No Ha Lugar* tanto la solicitud de desglose como la moción para replicar el escrito en oposición.[28]

Con el beneficio de la comparecencia de las partes, procedemos a exponer la norma jurídica aplicable al caso ante nuestra consideración.

## II.

### A. *Estándar de Revisión Judicial de Determinaciones Administrativas*

"Es norma de derecho claramente establecida que los tribunales apelativos, al momento de revisar las determinaciones administrativas, están obligados a conceder deferencia a las decisiones de las agencias en consideración a que estas poseen la experiencia y el conocimiento especializado sobre los asuntos que se les han delegado". *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 215 DPR ___ (2025) 2025 TSPR 33, pág. 10. Las determinaciones de una agencia administrativa gozan de una presunción de legalidad y corrección. *Transporte Sonnell, LLC v. Junta de Subastas ACT et al.,* 214 DPR 633, 648 (2024). Al evaluar una determinación administrativa, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones

---

[27] Véase, SUMAC-TA, Entrada 16.
[28] Véase, SUMAC-TA, Entrada 17.

de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473 (2024).

Ahora bien, en cuanto las determinaciones de derecho, nuestra más Alta Curia en *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros*, 215 DPR___, 2025 TSPR 56 (2025), incorporó la doctrina discutida en *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024), en cuanto a que los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. En aquella ocasión, nuestro Máximo Foro concluyó que "la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales" por lo cual enfatizó que, "al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos". *Vázquez y otro v. Consejo de Titulares y Junta de Directores del Condominio Los Corales y otros, supra,* pág. 32.

### B. Subastas Municipales

Las subastas, así como el requerimiento de propuestas (*request for propos*al), son los vehículos procesales disponibles para que el Gobierno de Puerto Rico, así como sus municipios, adquieran bienes y servicios. *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531 (2019). El propósito de estas herramientas es proteger el erario fomentando la libre y diáfana competencia entre el mayor número de licitadores posibles. *St. James Sec. v. AEE*, 213 DPR 366, 377-378 (2023).

Como regla general, corresponde a cada ente gubernamental ejercer su poder reglamentario para establecer el procedimiento y las guías a seguirse en sus subastas. En el caso de los municipios, tanto las subastas tradicionales, así como el requerimiento de propuestas que adjudique una Junta de Subastas Municipal, están

reguladas por la Ley Núm. 107 de 13 de agosto de 2020, según enmendada, conocida como *Código Municipal de Puerto Rico,* 21 LPRA sec. 7001 *et seq.,* ("Código Municipal"). El aludido Código Municipal, *supra,* establece que los municipios deberán cumplir con el procedimiento de subasta pública, salvo contadas excepciones. 21 LPRA Sec. 7211. Para ello, todo municipio constituirá y tendrá una Junta de Subastas.

En lo atinente al asunto ante nuestra consideración, el Artículo 2.040 (a) del Código Municipal, 21 LPRA Sec. 7216, establece que la Junta de Subasta entenderá y adjudicará todas las subastas que sean requeridas por ley, por ordenanza municipal o reglamento. Cuando se trate de compras, construcción o suministros de servicios, el mencionado artículo establece como criterio de adjudicación el que la Junta adjudicará a favor del postor razonable más bajo. Además, tomará en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta. *Íd.*

No empece a lo anterior, conforme el discutido artículo, la subasta podrá adjudicársele a un postor, aunque no sea necesariamente el más bajo, o sea el más alto, si ello beneficia el interés público. En tal situación, la Junta de Subasta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifiquen tal adjudicación. *Íd.*

En conformidad con lo anterior, los tribunales tenemos la obligación de asegurar que las entidades públicas cumplan con las disposiciones normativas aplicables y con los reglamentos y procedimientos adoptados por ellas para regir la celebración de

subastas para la adquisición de bienes y servicios del sector privado. *RBR Const., SE v. AC,* 149 DPR 836, 856 (1999). También, debemos asegurar que en estos procesos se trate de forma justa e igualitaria a todos los licitadores, al momento de recibir y evaluar sus propuestas y de adjudicar la subasta. *Íd.*, pág. 848-849.

Por todo lo anterior, la notificación de la adjudicación debe ser clara y cumplir con los requisitos dispuestos en el Artículo 2.040 (a) del Código Municipal, *supra*:

> La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo, o mediante correo electrónico, si así fue provisto por el licitador o licitadores. En la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta. Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código.

Sobre el particular, nuestro Tribunal Supremo de Puerto Rico ha sido enfático que la notificación de la adjudicación de subasta debe contener, al menos: "(1) los nombres de los licitadores que participaron en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos y (4) la disponibilidad y el plazo para solicitar la reconsideración y revisión judicial." *Torres Prods. v. Junta Mun. Aguadilla,* 169 DPR 886, 895 (2007). De igual manera, es necesario que en los procesos informales, la agencia exponga "una explicación de las bases sobre las que descansa su decisión". *L.P.C. & D., Inc., v. A.C.,* 149 DPR 869, 878 (1999).

Ahora bien, los tribunales reconocemos la discreción de las juntas de subastas, "al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la

agencia y al interés público en general". *CD Builders v. Mun. Las Piedras,* 196 DPR 336, 348-349 (2016). No obstante, los procedimientos de subastas son procedimientos con ciertas características adjudicativas, por eso, una vez se ha tomado la decisión administrativa, la parte adversamente afectada tiene derecho a solicitar la revisión judicial. *LPC & D., Inc. v. AC,* 149 DPR 869, 877 (1999).

**III.**

En el presente recurso, la Recurrente trae a nuestra atención dos (2) señalamientos de error. A través del primero, sostiene que la Parte Recurrida incidió al no adjudicarle la subasta, a pesar de que cumplió con todos los requisitos exigidos y presentó la oferta más económica. Precisa que la Junta "lo descalificó alegando la ausencia de un "precio por alterna" sobre un sistema hidráulico que nunca fue incluida en el paquete oficial de subasta ni notificada mediante enmienda alguna."[29] Además, arguye que la Parte Recurrida contravino la normativa aplicable al no exponer de forma clara y específica las razones de interés público que justificaran el rechazo de su propuesta.

Por otro lado, en su segundo señalamiento de error, Dunamis aduce que la notificación de la adjudicación de subasta careció de fundamentos objetivos y estuvo fundamentada en expresiones verbales realizadas durante la reunión pre-subasta. Discute que la Junta no detalló dónde se exigía la alterna, ni explicó por qué su inobservancia debía considerarse fatal.

Por estar ambos señalamientos estrechamente relacionados, procederemos a discutirlos en conjunto.

De entrada, resulta meritorio puntualizar que el ordenamiento jurídico no exige que la Junta adjudique la buena pro al licitador

---

[29] Véase, SUMAC-TA, Entrada 1, pág. 18.

que presenta la oferta más baja. Por el contrario, el Artículo 2.040(a) del Código Municipal, *supra,* dispone que la adjudicación debe considerar, entre otros factores esenciales, si la propuesta cumple con las especificaciones del pliego, las capacidades del licitador y cualquier condición incluida en los documentos de subasta. Asimismo, establece que una subasta puede ser adjudicada a un postor, aunque su oferta no sea la más baja, si ello beneficia el interés público. *Íd.* En ese sentido, en el presente caso, el mero hecho de que Dunamis presentara la oferta más económica no obligaba a la Junta a adjudicarle la buena pro automáticamente. Esta tenía la facultad de considerar otros requisitos mandatorios previo a emitir una determinación. A la luz de lo esbozado, el argumento de la Recurrente en cuanto a dicho asunto carece de méritos.

Por otro lado, de un análisis del expediente ante nuestra consideración se desprende que, desde el inicio del proceso, la Recurrente fue debidamente apercibida sobre la necesidad de incluir la alterna. Según expuesto, el 16 de mayo de 2025 se celebró la reunión pre-subasta, a la cual asistieron varios licitadores, incluyendo a Dunamis, representado por el señor Juan Reyes. Durante dicha reunión se discutieron los requisitos mandatorios, las formas de ofertar, los formularios aplicables, incluyendo el Exhibit C titulado *Cost Form,* y se brindaron instrucciones específicas sobre el contenido requerido. De forma particular, el Presidente de la Junta hizo constar que "[a] la hora de presentar la oferta **tienen que presentar las dos opciones**, una con la prueba de presión pasando y otra con la prueba de presión fallando, cuál sería el plan y el **costo por los dos escenarios**."[30] (Énfasis nuestro). Asimismo, enfatizó la importancia de cumplir con todos los

---

[30] Véase, *Expediente de Subasta Núm. 008 2024-2025,* pág. 834.

requisitos de la subasta, ya que no bastaba con proponer la oferta más económica.

A pesar de ello, al examinar el Exhibit C, identificado como *Cost Form*, observamos que Dunamis marcó "N/A" en el renglón "*Alternate* 1".[31] Es decir, la Recurrente no incluyó el precio requerido para el escenario alterno. Adviértase que, si bien la asistencia a la aludida reunión no era obligatoria, Dunamis participó y tuvo acceso directo a la discusión del referido requisito. De igual forma, tras la consulta realizada al Departamento de Vivienda por el Presidente de la Junta, la agencia confirmó que los licitadores tenían conocimiento "**desde el inicio** sobre la posibilidad de completar una adjudicación por renglón y se explicó el proceso que se llevaría a cabo."[32] (Énfasis nuestro).

Ante este cuadro, resulta forzoso concluir que la alterna formaba parte integral del proceso de subasta y Dunamis conocía su exigencia al momento de presentar su propuesta. Cónsono con ello, razonamos que, tal y como resolvió la Junta, Dunamis no cumplió con todos los requisitos de la subasta.

En esa misma línea, conviene señalar que, la Junta también concluyó que: (1) Rebuilders PR, LLC no presentó el costo por la alterna y (2) Enviro-Tab sí sometió su oferta y el costo por la alterna. En otras palabras, tanto Dunamis como Rebuilders PR, LLC incumplieron con las especificaciones de la subasta, mientras que Enviro-Tab cumplió con los requisitos exigidos. A esos efectos, Enviro-Tab fue la única compañía que presentó propiamente una oferta de subasta. Por tal motivo, en este caso particular, la Junta no venía obligada a esbozar razones de interés público al emitir su notificación, pues la subasta en controversia se adjudicó al único postor elegible.

---

[31] *Íd.*, pág. 1062.
[32] *Íd.*, pág. 1762.

Por último, puntualizamos que, aún cuando la Recurrente insiste en que la notificación de la Junta careció de fundamentos y la adjudicación de la subasta estuvo basada en expresiones verbales, el expediente ante nos evidencia que: (1) la notificación de la Junta fue clara y detalló las razones por la cuales las propuestas de Dunamis y Rebuilders PR, LLC fueron rechazadas; y (2) la adjudicación de la subasta dependió del cumplimiento con los requisitos informados oportunamente. Así pues, la notificación emitida por la Junta resulta adecuada.

A la luz de todo lo anterior, concluimos que los errores señalados por la Recurrente no fueron cometidos. La determinación de la Junta está sustentada en la prueba que obra del expediente. Además, Dunamis no demostró que la Parte Recurrida actuó de manera arbitraria o ilegal, o en forma tan irrazonable que su actuación constituyó un abuso de discreción. Consecuentemente, procede confirmar la determinación recurrida.

**IV.**

Por los fundamentos antes expuestos, **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones